### TRAER v. FOWLER.

Circuit Court of Appeals, Eighth Circuit. March 21, 1906.)

No. 2,288.

1. COURTS—FEDERAL COURTS—STATE RULES OF PROPERTY PREVAIL IN.

Rules of property established by the construction by the highest judicial tribunal of a state of its Constitution or statutes prevail in the federal courts where no question of right under the Constitution and laws of the nation, and no question of general or commercial law is involved.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 958.
State laws as rules of decision in federal courts. see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. MORTGAGE—FORECLOSURE SALES IN ILLINOIS—OWNER OF RENTS AND PROFITS DURING REDEMPTION PERIOD.

During the period of redemption from foreclosure and execution sales of real estate in Illinois the mortgagor or judgment debtor is entitled to the possession and rents and profits of the property. The purchaser has a lien for the amount of his bid and interest during this period. If no redemption is made the title he acquires at the expiration of the period of redemption relates back to the beginning of his lien to cut off intervening incumbrances, but it does not divest the mortgagor or judgment debtor of, or vest in the purchaser the right to the possession or to the rents and profits during the period of redemption.

[Ed. Note.—For cases in point, see vol. 35, Cent. Dig. Mortgages, §§ 1562, 1567.]

3. SAME—A JUDGMENT CREDITOR WHO REDEEMS HAS THE SAME RIGHTS AS A PURCHASER.

A judgment creditor who redeems from a foreclosure or execution sale under the statutes of Illinois buys the lien of the purchaser and secures no more or less rights than the purchaser would have acquired if no redemption had been made.

4. SAME—COAL IN MINE IS REAL ESTATE AND SUBJECT TO REDEMPTION.

Coal lying under land in its natural deposit is real estate and foreclosure and execution sales thereof are subject to redemption.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 134.]

5. MINES AND MINERALS—RENTS AND PROFITS OF—WHAT ARE.

The coal and other materials derived from the ordinary and reasonable operation of open coal mines, iron mines, lead mines, gravel banks, clay pits, stone quarries, slate quarries, salt works, oil wells, and other property of this character which diminishes in quantity and value by use, constitute the rents and profits thereof, and not the body of the property, and belong to the owners of the former and not to the owners of the latter.

6. MORTGAGE—FORECLOSURE SALE OF MINE—RIGHT OF JUDGMENT CREDITOR WHO REDEEMS TO COAL MINED DURING REDEMPTION PERIOD.

A judgment creditor who redeems from a foreclosure sale of mortgaged coal in an opened mine under the statutes of Illinois is not entitled to recover damages from a receiver in the foreclosure suit for his extraction of coal from the mine by ordinary and reasonable mining operations during the period of redemption.

7. COURTS—OPINIONS—GENERAL STATEMENTS NOT AUTHORITATIVE BEYOND QUESTION AT ISSUE.

General expressions in the opinions of courts are not authoritative beyond the questions which they were considering and deciding when they used them.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 335.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Southern District of Iowa.

William McNett (Walter McNett, on the brief), for plaintiff in error.

Nathaniel T. Guernsey, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. The statutes of Illinois provide that the mortgagor may redeem from a foreclosure sale of his real estate at any time within 12 months after the date of the sale, and that if

he fails to do so any of his judgment creditors may make a redemption within three months after the expiration of the 12 months by paying the amount bid at the sale and interest. If no redemption is made, the deed to the purchaser issues after the expiration of the period of redemption. 2 Starr & C. Ann. St. Ill. 1896, c. 77, §§ 18, 20, 21.

The assignor of the plaintiff, a judgment creditor of the mortgagor, redeemed from the foreclosure sale of mortgaged coal underlying 80 acres of land in the state of Illinois, and afterwards conveyed to the plaintiff both the coal under the land and its claim for damages for the removal and conversion of coal mined during the period of redemption. The foreclosure sale was made on November 25, 1899, and the redemption on February 25, 1901. In the foreclosure suit the defendant had been appointed a receiver of the mortgaged property, and during the period of redemption he operated the mine in which the mortgaged coal was situated without the authority or consent of the mortgagor. No shaft had been sunk or mine opened from the surface of the land under which the coal lay, but it was accessible through the mine of an adjoining owner, and the mortgagor had caused the coal to be mined through this adjacent property before any receiver was appointed. The receiver extracted the mortgaged coal in the same way. Between December 9, 1899, and June 6, 1901, the defendant, as receiver in the foreclosure suit, mined and converted to his own use, without the authority or consent of the mortgagor, 50,000 tons of coal, and thereby diminished the coal in the mine by that amount. There was no statement in the petition of the amount of coal, if any, which was mined subsequent to the redemption, and for that reason no cause of action was stated, unless the plaintiff was entitled to recover for coal extracted during the redemption period. The court below sustained a demurrer to a petition of the plaintiff for damages which disclosed the foregoing facts, and this ruling is challenged as error.

Is a judgment creditor who redeems from a foreclosure sale of mortgaged coal in an open mine under the statutes of Illinois entitled to the coal extracted therefrom in the ordinary and reasonable working of the mine during the period of redemption? This question must be answered by the decisions of the Supreme Court of Illinois, for the rules of property established by the construction by the highest judicial tribunal of a state of its Constitution or statutes prevail in the federal courts where no question of right under the Constitution and laws of the nation and no question of general or commercial law is involved. Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260; Percy v. Cockrill, 4 C. C. A. 73, 82, 53 Fed. 872, 877; Madden v. Lancaster Co., 12 C. C. A. 566, 570, 65 Fed. 188, 192; Union Pac. R. Co. v. Reed, 25 C. C. A. 389, 394, 80 Fed. 234, 239.

In Stephens v. Illinois Mutual Fire Ins. Co., 43 Ill. 327, 331, the question was whether the title of the mortgagor was divested before the expiration of the period of redemption by the foreclosure sale so that his grantee could not recover of the insurance company the value of improvements upon the mortgaged property which were

insured for his benefit, as owner before the foreclosure sale, and which were destroyed by fire during the period of redemption. The court decided that he held the title to the property during the period of redemption and that he could recover. It said:

"In this state, the purchaser under a sheriff's sale, upon judgment and execution, or at a master's sale, on foreclosure of a mortgage, acquires by his purchase no new title to the premises until the period of redemption has passed and he is entitled to a deed. His deed will relate back, it is true, to the beginning of his lien, in order to cut off intervening incumbrances, but it will not carry back the absolute divestiture of title, as is evident from the fact, that neither judgment debtor nor mortgagor can be called to account for rents and profits. His title becomes absolute only when his right to a deed accrues. If it is a sale under a decree of foreclosure, the mortgagor still has the estate of a mortgagor, with this qualification, that the amount and time of redemption have become absolutely fixed by the decree and sale, and his estate will be absolutely divested if he fails to redeem within the allotted time."

In Rockwell v. Servant, 63 Ill. 424, 427, the issue was whether the time limited by the statute for the commencement of an action of ejectment commenced to run in favor of one Seymour, the purchaser at the foreclosure sale, and against the heirs of the mortgagor, at the date of the sale or at the time of the expiration of the period of redemption, and the Supreme Court of Illinois said:

"The heirs in possession were not liable for use and occupation, or to account for rents and profits, until Seymour was entitled to his deed. And had the latter been and remained in possession after the rendition of the judgment, he would have been bound to account for rents and profits until the time for redemption had expired, precisely as though he had been in possession as mortgagee, and there had been no judgment rendered."

And that court held that the time limited did not commence to run until the period of redemption expired.

In Locey Coal Mines v. Chicago, W. & V. Coal Co., 131 Ill. 9, 18, 21, 22 N. E. 503, 8 L. R. A. 598, a sale in one parcel under a decree upon a creditors' bill had been made, without the right of redemption, of 280.31 acres of mining lands, of the coal under 211.71 acres of other land and of the personal property used in operating the mines. The court decided that "the right which the defendant had acquired prior to the filing of the bill to the coal under the 211.71 acres is an interest in land and is in its nature real property"; that this interest in coal and the other real estate involved in the suit should be sold separate from the personal property and subject to the debtor's statutory right of redemption. The main issue in this case was whether or not the defendant was entitled to this right of redemption. Before the decree was rendered a receiver had been appointed who was operating the mines. In the opinion the court states that it was suggested in argument that there ought to be no right of redemption because neither the receiver, the defendant, nor the purchaser could be permitted to operate the mines during the period of redemption and they would consequently become seriously injured unless the water was kept out of them and fresh air was supplied to them at an expense of $400 per month. The court then proceeds in this way:

"This expense should not 'be borne by the receiver, as he can no longer work the mines, since his doing so would simply be a subtraction or taking away of a portion of the property sold. The defendant, being insolvent and presumably unable in any event to redeem, would have no inducement to incur such expense, since for the same reason above stated, it could not be permitted to operate the mines during the period of redemption. The purchaser, on the other hand, would be entitled to possession only after the redemption had expired, and so could not legally enter upon the mines for the purpose of protecting them from deterioration."

Counsel for the plaintiff in the action under consideration rely with great confidence upon the extract from this opinion just quoted to sustain a contention which they make that the operation of the mine in which the mortgaged coal in controversy was situated was a subtraction of a part of the property sold and not the taking of its ordinary rents and profits. The quotation appears to us, however, to be, not an expression of the opinion of the Supreme Court of Illinois, but a statement by that court of the contention of counsel in that case and this view is confirmed by the fact that the established rules of law are in conflict with some of the statements in this extract as will be demonstrated in a later part of this opinion and by the fact that the next sentence in the opinion of that court appears to be its answer to the specious argument of counsel which it had been reciting. That sentence reads:

"These inconveniences doubtless may arise, but they do not, in our opinion, justify the court in disregarding or overriding a plain and positive mandate of the statute."

In Davis v. Dale, 150 Ill. 239, 243, 244, 37 N. E. 215, 216, a receiver had been appointed in a suit to foreclose a mortgage and empowered to take possession of the mortgaged property and to collect its rents and profits. He continued to do so after the property had been bid off at the foreclosure sale for the full amount of the decree. At the end of the period of redemption he had a net balance of $2,074.21 in his hands and the purchaser asked for an order upon him that he should pay the taxes upon the mortgaged property which had accrued during the period of redemption. The court refused the request and said:

"The grantor in the deed of trust, or the owner of the equity of redemption, was entitled to the possession of the premises, and to receive the rents, issues and profits thereof, after the sale and until the time of redemption expired. * * * In any event, the possession of the receiver, and his receipt of the rents and profits arising from the property, would be for the benefit of the person entitled to the same, so that the parties acquired no additional right because the fund is in the hands of the receiver. * * * The purchaser at the sale took as a stranger whatever title was authorized by the decree to be sold. By law he became entitled to all the right, title and interest of the mortgagor in the premises, if no redemption was made in the time and manner prescribed by the statute, and necessarily took the estate charged with all the infirmities of title, and subject to all prior liens to which it would have been subject in the hands of the mortgagor. He was required to know that the mortgagor would be entitled to the possession, and rents, issues and profits, of the premises pending the running of the period of redemption."

From the statutes and decisions to which we have now adverted these rules of property in the state of Illinois may be safely deduced.

Coal underlying land in its natural deposit is real estate, and any foreclosure or execution sale of it is subject to redemption to the same extent as a foreclosure or execution sale of any other real estate. During the period of redemption the purchaser at such a sale acquires no title, right of possession, or right to the rents and profits of the mortgaged property. He has a lien thereon for the amount of his bid and interest. Stephens v. Mutual Fire Ins. Co., 43 Ill. 327, 336; Rockwell v Servant, 63 Ill. 424, 427, 429; Ogle v. Koerner, 140 Ill. 170, 29 N. E. 563, 566. The mortgagor or judgment debtor has the right of possession and the right to the rents and profits of the mortgaged property during the period of redemption. The title which vests in the purchaser at the expiration of that period, in the absence of redemption, relates back to the beginning of his lien to cut off intervening incumbrances, but it does not divest the mortgagor or judgment debtor of his right to the possession and to the rents and profits of the property sold during the period of redemption. Stephens v. Illinois Mutual Fire Ins. Co., 43 Ill. 327, 331; Hardenburg v. Beecher, 104 Pa. 20, 23, 24; Garrett v. Dewart, 43 Pa. 342, 82 Am. Dec. 570.

A judgment creditor who makes a redemption under the statutes of Illinois buys the lien of the purchaser at the foreclosure or execution sale and secures no more or less rights than the purchaser would have acquired if no redemption had been made. The taking by a receiver appointed in the suit in which the sale is made of the rents and profits or of a part of the body of the property during the redemption period does not affect the rights of the parties, but he holds the property he thus takes for the benefit of the party to whom it of right belongs. The result of the application of these rules to the action under consideration is that the rents and profits of the mortgaged coal during the period of redemption were the property of the mortgagor and neither the purchaser at the sale nor the judgment creditor who subsequently redeemed from that sale ever acquired any right to, or interest in them. The only remaining question is, was the coal which the receiver mined during the period of redemption a part of the rents and profits of the mortgaged property or was it a part of its corpus? If it was the former, the plaintiff is not entitled to recover. If it was the latter, he may have a right of action.

Rents and profits are commonly derived from coal mines, iron mines, gravel banks, clay pits, lead mines, stone quarries, slate quarries, salt works, oil wells, and other similar properties by working them, and thereby extracting a portion of the valuable deposits they contain and diminishing the quantity and value of the minerals or other materials in the mine. The operation of such mines, quarries and deposits necessarily subtracts portions of them and tends to exhaust them, but the law which gives to the tenant for life, the widow and the mortgagor rents and profits, or a portion of them, applies equally to property of this character and to real estate which yields income without diminution. It is much more difficult to draw the line of demarcation between the rents and profits and the corpus of property of this nature than it is to separate the rents and profits of a farm, a tenement or an office building from the body of the property

itself. This rational rule has, however, been established for this purpose, without substantial conflict, by the concurring wisdom of courts and judges. The coal, iron, or other materials derived from the ordinary and reasonable operation of opened coal mines, iron mines, lead mines, gravel banks, clay pits, stone quarries, slate quarries, salt works, oil wells, and other property of this character which diminishes in quantity and value by its use, constitute the, rents and profits thereof, and not the body of the property, and belong to the owners of the former and not to the owners of the latter. Neel v. Neel, 19 Pa. 323, 328, and cases there cited; Hardenburg v. Beecher, 104 Pa. 20, 23, 24; Gaines v. Green Pond Iron Min. Co., 33 N. J. Eq. 603, 611, 613; Stoughton v. Leigh, 1 Taunt. 402; Coates v. Cheever, 1 Cow. (N. Y.) 474; Lenfers v. Henke, 73 Ill. 405, 24 Am. St. Rep. 263; Ward v. Carp River Iron Co., 47 Mich. 65, 69, 70, 10 N. W. 109; 2 Freeman on Executions, § 323. The reason for this rule is that the opening and operation of a mine or a clay pit makes the ordinary product of its working the rents and profits of the property and estops all who own or deal with it from denying this conclusion. The rule has no application to mines and deposits that have never been opened or operated, because in such cases its reason ceases. Counsel for the plaintiff concede the existence and application of this standard of measurement in cases involving the rights of life tenants and widows entitled to dower, but insist that the case at bar is not governed by it because it involves the rights of a mortgagor, a purchaser and a judgment redemptioner from a foreclosure sale, because the mortgage did not describe real estate or a mine, but coal lying under land and because the opening to this coal was not through a shaft in the land above it but through another mine by its side. No sound reason occurs to us, however, why the rents and profits of mines sold under foreclosure or execution should not be measured by the same standard by which they are meted to life tenants and widows. This question arose in Hardenburg v. Beecher, 104 Pa. 20, 23, 24, in which the right to oil produced by a well upon the property between the day of its sale under execution and the acknowledgment of the sheriff's deed was in issue. The court said:

"The debtor is, however, entitled to the possession until the acknowledgment; the purchaser has by his mere purchase acquired no title to the present enjoyment. This right to possession carries with it its attendant advantages, the right to the growing crops as they mature; the right to an ordinary use of a mine or quarry, or to the flow from an oil well."

In that case the judgment debtors had surrendered the property and the purchasers at the sale had repaired the tanks and machinery, and secured the oil and the court held that they might hold it against execution creditors of the debtors who sought to levy upon it because the judgment debtors had voluntarily abandoned it.

In Ward v. Carp River Iron Co., 47 Mich. 65, 69, 10 N. W. 109, 111, a purchaser at an execution sale of an iron mine brought an action of trover against one who had bought of the judgment debtor 1,834 tons of iron ore which the latter had extracted from the mine during the period of redemption. The declaration in that case contained

averments that the lands from which the ore was taken were mining lands, that their chief and nearly their entire value consisted in the natural deposits of iron ore therein and that these 1,834 tons of iron of great value had been subtracted from the mine.    But the court sustained a demurrer to the declaration and said:

"But it is a fatal objection to the declaration that it does not show that the premises were not used 'in like manner and for the like purposes in and for which they were used and applied prior to the sale, doing no permanent injury to the freehold.' It is consistent with all that is alleged that the debtor in the execution only continued the use of opened mines in the customary way, as a dowress might have done (Stoughton v. Leigh, 1 Taunt. 402; Coates v. Cheever, 1 Cow. (N. Y.) 460; Billings v. Taylor, 10 Pick. (Mass.) 460, 20 Am. Dec. 533; Crouch v. Puryear, 1 Rand. (Va.) 258, 10 Am. Dec. 528); or any other tenant for life (Neel v. Neel, 19 Pa. 323; Irwin v. Covode, 24 Pa. 162); or even a tenant for years (Clegg v. Rowland, L. R. 2 Eq. Cas. 160). And the debtor's rights are certainly not less than those of a tenant for years in any particular. He may not open new mines, but the old ones he may continue to work in the customary and reasonable way."

No authority in contravention of the views here expressed has been called to our attention except the quotation above from the opinion of the Supreme Court of Illinois in Locey Coal Mines v. Chicago, W. & V. Coal Co., 131 Ill. 19, 22 N. E. 503, 8 L. R. A. 598, which is not persuasive because it appears to be a statement of the contention of counsel and not an expression of the view of the court, because it runs counter to established rules of law and because the question under consideration here was not presented, discussed or decided in that case, and expressions in the opinions of courts are not authoritative beyond the questions which they were considering and deciding when they used them.    Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257; King v. Pomeroy, 58 C. C. A. 209, 216, 121 Fed. 287, 294, and cases there cited.

The conclusion is that the established rule for the admeasurement of the rents and profits of mines, quarries, and oil wells in cases involving rights of dower and of life tenants is equally controlling in cases in which the rights of judgment debtors, mortgagors and purchasers during the period of redemption are concerned.    The argument that this rule is inapplicable to this case because the mortgaged property was coal lying under the ground and neither a mine nor land containing a mine and because the coal was not opened and operated through a shaft in the land above it is not convincing.    Coal in its natural state beneath the surface of the earth is, under the laws of Illinois, real estate, and foreclosure, and execution sales of it are subject to redemption.    When opened for mining purposes it is a mine whether it is so described in the mortgages and conveyances of it or not, and when it is and has long been operated through adjoining lands it is as much an opened mine as though a working shaft had been sunk to it from the surface of the land above it.    The petition in this case contains no averment that the coal taken by the receiver during the period of redemption was not secured by the ordinary and reasonable operation of the opened mine which contained the mortgaged coal in the same way in which it had been worked before the receiver was appointed.    It therefore fails to state a cause

of action against the receiver because all the coal thus mined was the property of the mortgagor, and neither the purchaser at the foreclosure sale nor the subsequent redemptioner nor the plaintiff, its assignee, ever acquired any right to, or interest in it, or in the possession of the mine during the period of redemption while the receiver was extracting it. As the plaintiff has disclosed no cause of action in his petition, it is not material to consider or determine what rights to this coal, or to its proceeds other parties may have acquired, and that question is left without discussion or decision.

The judgment below was right, and it must be affirmed.
It is so ordered.