WILLIAM E. BOEING and Others v. FREDERICK D. OWSLEY.[1]

June 20, 1913.

No. 18,094—(18).

**Will of nonresident — devise of real estate.**
    1. R. L. 1905, § 3687, providing, among other things, that, upon administration in this state of the estate of a nonresident testator, the real estate shall be assigned according to the will, is not a statute of devolution; and, when construed in connection with the general statutes of descent and

[1] Reported in 142 N. W. 129.

Note.—As to when agreement or instrument conferring right to mine and remove coal is to be regarded as an absolute sale or conveyance of coal in place, as distinguished from a lease or a conditional sale, see note in 4 L.R.A.(N.S.) 207. And on the question when instrument creating right in minerals in land is to be regarded as a lease, as distinguished from a license, see note in 26 L.R.A.(N.S.) 614.

distribution, as it must be, it merely declares that such real estate shall be so assigned, as in the case of a domestic will, subject to any conditions and restrictions imposed by the statutes of this state upon testamentary dispositions of land generally.

### Renunciation of will by spouse of nonresident testator.

2. No reason is to be found either in our statutes or our public policies why the general rule, that no presumption of exclusion of nonresidents will be indulged where the terms of the statute are general, should not be applied to R. L. 1905, §§ 3648, 3649; and hence the surviving spouse of a nonresident testator may, though also a nonresident, renounce the will and claim as statutory heir.

### Same — estoppel.

3. Such a renunciation, when properly made, will estop the survivor from thereafter claiming under the will in this state or elsewhere.

### Same — where made.

4. The renunciation contemplated by section 3649 must be made in the probate court of this state in which the foreign will is proved, or, if already proved elsewhere, in which it is allowed and filed, and the existence or nonexistence in other states of statutes relating to election can be material only upon a question of common law estoppel.

### Surviving spouse — degree of kindred.

5. The rights of a surviving spouse as statutory heir under R. L. 1905, § 3648, are not affected by section 3652, relating to computation of "degrees of kindred," and excluding those not of the blood of the ancestor from inheritance where the property is ancestral.

### Mining leases construed.

6. Certain so-called mining leases, executed by a nonresident testatrix in her lifetime upon lands in this state, and in which her husband joined, held to be leases and not conditional sales of the ore in place, thus entitling her husband, claiming as statutory heir under R. L. 1905, § 3648, to one-third of the royalties accruing and to accrue thereunder subsequently to her death.

Frederick D. Owsley, having filed in the probate court for St. Louis county a renunciation of the provision made for him by his wife, Marie M. Owsley, in her last will and testament, petitioned that court to determine petitioner's rights in the estate and to assign and distribute the estate to the persons entitled thereto. William E. Boeing and Rudolph Ortmann, as executors and trustees under the will, and William E. Boeing and Caroline Marie (Boe-

ing) Poole, as heirs of the deceased and devisees under her will, filed objections in which they set up that, under the provisions of R. L. 1905, § 3652, and §§ 3683 to 3687, the petitioner was excluded from any inheritance in his wife's property; that no law of the state of Virginia permitted a surviving spouse to renounce the provisions of a will of his deceased spouse; that the law of that state, where both husband and wife were domiciled at the time of her death, must govern.

The petition was heard by Gilpin, J., who made findings of fact and as conclusion of law decreed that petitioner, as surviving spouse of the decedent, was entitled in absolute fee simple to an undivided one-third interest in the lands and interests in lands of which the testator died seized. The objectors took the matter to the district court for that county, both by appeal and writ of certiorari, and in the district court it was heard by Dibell, J., who made findings of fact and ordered judgment in favor of petitioner. From the judgment of the district court, entered pursuant to the order for judgment, the objectors appealed. Affirmed.

*W. W. Gurley, Washburn, Bailey & Mitchell, Howard M. Carter, Arthur Dyrenforth, Sidney W. Worthy* and *Clark M. Capenee,* for appellants.

*Frank B. Kellogg, C. A. Severance, Robert E. Olds* and *Bryan Y. Craig,* for respondent.

PHILIP E. BROWN, J.

Prior to 1890, Wilhelm Boeing became the owner, by purchase, of a large acreage in the northern counties of this state, which contained deposits of iron ore. He died testate in the year stated, devising his estate to his wife and his three children in equal shares. His wife's interest thereby acquired was later increased by inheritance of the share of one of the children who died in infancy. Mrs. Boeing and Doctor Owsley, the respondent, intermarried in 1898. No issue resulted from the marriage. Neither the doctor nor his wife ever resided in this state, but lived in Albemarle county, Virginia, where she died testate on December 10, 1910, leaving her surviving her husband and two children, William E. Boeing and

Caroline Marie Boeing Poole, the issue of her former marriage. By her will she bequeathed $35,000 in cash to her husband, and charged her estate with the payment of a life annuity of $10,000 in his favor. The will further provided that the bequest and annuity were intended by her to be in lieu of all rights which the law might give Doctor Owsley in the estate of the testatrix, and, in the event of his ignoring her will and appealing to the law, he was to receive nothing under the will. She devised a large part of her property to her children, who are parties to these proceedings. William E. Boeing and Rudolph Ortmann were appointed executors and qualified. The will was admitted to probate in the circuit court of Albemarle county, Virginia, on January 3, 1911, and an authenticated copy thereof was filed and recorded in St. Louis county, Minnesota, on February 27, 1911, and ancillary letters were issued by the probate court of the last-named county to the executors mentioned. All of the property owned by her in this state was disposed of by the will, and all of it came to her from her first husband as stated.

Doctor Owsley, on May 23, 1911, filed in the court of original probate, an instrument purporting to renounce the provisions of the will in his behalf, and on May 29, 1911, filed a like instrument in the probate court of St. Louis county. Thereafter he petitioned the latter court to have his claim to a one-third interest in all of the real and personal property of his deceased wife within the jurisdiction of the court determined, and for a distribution of the estate accordingly or a partial distribution upon such basis. At the hearing, the children of the deceased and the executors contested the application. The court, however, made its order adjudging Doctor Owsley to be vested, as surviving spouse, in fee simple of a one-third interest in the lands of which the deceased died seized, together with a one-third interest in all rents, profits, and royalties accruing and to accrue after and since the death of the testator from certain leases of the lands. The heirs and executors appealed to the district court of the county, and a trial de novo was had, resulting in a judgment affirming the decree of the probate court; whereupon they appealed to this court.

122 M.—13.

1. The first contention of the appellants is that, under the facts stated, Doctor Owsley had no right to renounce the will and take as statutory heir, and the question thus presented is whether the statutes under which he claims apply to estates of nonresidents. The statutory provisions, R. L. 1905, pertinent to this inquiry are as follows:

"3648.   Lands other than homestead— The   surviving   spouse shall also inherit an undivided one-third of all other lands of which decedent at any time during coverture was seized or possessed, to the disposition whereof, by will or otherwise, such survivor shall not have consented in writing   *   *   *."

"3649.   Election — Interpretation — Devise not additional— If the will of a deceased parent makes provision for a surviving spouse in lieu of the rights in his estate secured by statute, unless such survivor, by an instrument in writing filed in the probate court in which such will is proved within six months after the probate thereof, shall renounce and refuse to accept the provisions of such will, such spouse shall be deemed to have elected to take thereunder. And no devise or bequest to a surviving spouse shall be treated as adding to the right or interest secured to such survivor by statute, unless it clearly appears from the contents of the will that such was the testator's intent; Provided, that if the title to the homestead be in litigation, and the same be not determined within the six months aforesaid, then said spouse may so elect within thirty days after said litigation is concluded."

"3659.   Who may make a will — How executed— Every   person of full age and sound mind, by his last will   *   *   *   may dispose of his estate, real and personal, or any part thereof, or right or interest therein; and the words 'every person' shall include married women."

"3662.   Wills made out of the state —A   will made   out   of   the state and valid according to the laws of the state or country in which it was made, or of the testator's domicil, if in writing, and signed by the testator, may be proved and allowed in this state, and shall thereupon have the same effect as if it had been executed according to the laws of this state."

"3683. **Wills proved elsewhere—** Every will duly proved and allowed outside of this state, in accordance with the laws in force in the place where proved, may be allowed, filed and recorded in any county in which the testator left property upon which such will may operate."

"3684. **Filing — Petition — Notice —**When a copy of such will and of the probate thereof, duly authenticated, shall be presented to the court by the executor or other person interested in the will, with a petition for its allowance and for letters, the court shall appoint a time and place of hearing, notice of which shall be given as in the case of an original petition for the probate of a will."

"3685. **Hearing proofs of probate of foreign will—** If on the hearing the court shall find from the copies before it that the probate of such will was granted by a court of competent jurisdiction, and it does not appear that the order or decree so granting it is not still in force, the copy and the probate thereof shall be filed and recorded, and the will shall have the same force and effect as if originally proved and allowed in such court."

"3686. **Letters testamentary, etc., to be granted—** When any will is allowed as provided in §§ 3684, 3685, the court shall grant letters testamentary, or of administration with the will annexed, which shall extend to all the estate of the testator in this state. Such estate, after payment of debts and expenses of administration, shall be disposed of according to such will, so far as it may operate upon it, and the residue as is provided by law in cases of estates in this state belonging to persons who are residents of any other state or county (country)."

"3687. **Ancillary administration—** In all cases of administration in this state of the estates of decedents who were nonresidents, upon payment of the expenses of administration and of the debts here proved, the residue of the personalty shall be distributed according to the terms of the will applicable thereto, if there be a will, or according to the law of the decedent's domicil. Or the court, in its discretion, may direct that it be transmitted to the personal representative of the decedent at the place of such domicil, to be disposed of by him. And the real estate not sold in the course of administra-

tion shall be assigned according to the will, if there be one; otherwise, according to the laws of this state."

The necessity of a renunciation by Doctor Owsley in order to claim against the will is settled. So also it is clear that, in the absence of a will, there can be no question as to the applicability of section 3648 to estates of nonresidents; for the provision is general, and nonresidents are excluded from the operation thereof neither by any express statute, nor by implication from its terms or from the public policies of this state. The appellants stand squarely upon the ground that, by section 3687, the legislature provided that a nonresident testator has the right to dispose of all his property by will, to the exclusion of the surviving spouse. In other words, their position is that this section, and probably section 3686 also, is a statute of devolution, which alone must be looked to in assigning land in this state belonging to a nonresident testator, the precise clause upon which they predicate such claim being: "And the real estate not sold in the course of administration shall be assigned according to the will, if there be one; otherwise according to the laws of this state."

The respondent, on the other hand, takes the position that sections 3683 to 3687, inclusive, relate solely to probate and administration, and hence do not affect the applicability of section 3648 to estates of nonresidents, whether testate or intestate. The amount involved in this litigation is very large, and, in support of their respective contentions, counsel for both parties have exhaustively covered the field of argument and authority. On account, however, of the impracticability of taking up in detail the numerous and varied points made, we will confine ourselves mainly to the ultimate considerations necessary to the determination of the question before us.

The substantial equivalents of sections 3683 to 3686, inclusive, have been upon our statute books since 1851 (see R. S. 1851, c. 53, §§ 22 to 25, inclusive) and, as far as we are advised, they have consistently been treated as designed to accomplish the two-fold purpose of putting foreign wills upon the same plane with domestic wills, and of providing rules of administration. See Bloor v. Myerscaugh, 45 Minn. 29, 30, 47 N. W. 311; Putnam v. Pitney, 45

Minn. 242, 47 N. W. 790, 11 L.R.A. 41; In re Southard's Will, 48 Minn. 37, 50 N. W. 932; Babcock v. Collins, 60 Minn. 73, 61 N. W. 1020, 51 Am. St. 503. It is also worthy of notice that the provisions in question have always been classified, either by their general grouping, chapter titles, subject heads, or individual captions, as dealing with probate and administration, as distinguished from devolution. In addition to these considerations, our cases dealing with testate estates of nonresidents, while not, perhaps, necessarily deciding the point, have in effect declared, or else tacitly assumed, the applicability of section 3648 to testate estates of nonresidents. It was thus declared in Washburn v. Van Steenwyk, 32 Minn. 336, 20 N. W. 324, and in Fairchild v. Marshall, 42 Minn. 14, 16, 43 N. W. 563, we find the following:

"This court decided, in Washburn v. Van Steenwyk, supra, as before stated, that a will such as that under consideration made a case for election on the part of the widow between the provision made by it in her favor and that which the law makes to a widow out of the estate of her deceased husband. That is to be taken as the settled law of this state. The only question, save as hereinafter stated, left for this case by that decision is as to the extent to which she should be required to elect."

The same will was involved in both cases, and in each it appeared that the testator and his wife were nonresidents. While, therefore, no point was made upon the latter fact, the language used is significant, if not, indeed, conclusive, in view of the facts. In the Washburn case, furthermore, the rights of the widow under the Minnesota statute were expressly declared to be one of the questions involved (see page 347). In the case of In re Tower's Estate, 49 Minn. 371, 52 N. W. 27, which also involved the will of a nonresident, the right of the widow as heir under section 3648 seems to have been assumed. See also Staigg v. Atkinson, 144 Mass. 564, 12 N. E. 354, and Ford v. Ford, 80 Mich. 42, 44 N. W. 1057, our own statutes being involved in the former, and analogous provisions in the latter. The conclusion thus seems to us inevitable that up to the time of the revision of 1905 the right of the surviving spouse of

a nonresident testator to claim as heir under section 3648 was at least consciously assumed by this court.

We pass, then, to the consideration of the effect of section 3687, which, while founded, the same as the preceding section, upon G. S. 1894, § 4441, contains some features not heretofore found in the statutes. It is upon this section that the appellants base their most insistent claims, urging that, even if the rule was as above indicated before the enactment of this provision, it was changed thereby. More specifically it is contended that if this court, in construing the phrase "so far as it may operate upon it," in section 3686, held, either erroneously or correctly, that the statutory interest of the surviving spouse, under section 3648, was thereby excluded from the operation of the direction of section 3686 that the real estate of the nonresident testator "shall be disposed of according to such will," yet such can no longer be held under the comprehensive and unconditional terms of section 3687. In approaching the question thus made, we will concede, at the outset, that the phrase "so far as it may operate upon it," refers to the property covered by the will, that is, to the property purporting to be disposed of by the will; but it does not follow that the attitude of this court in this connection has heretofore been erroneous, nor that the rule is different under section 3687.

It is true that this section declares in unconditional terms that the residue of the personalty after the payment of the expenses of administration and debts here proved, "shall be distributed according to the terms of the will applicable thereto," and that "the real estate not sold in the course of administration shall be assigned according to the will, if there be one; otherwise according to the laws of this state;" yet we are familiar with no principle under which these provisions can be taken literally and without regard to the previous sections cited, as constituting a complete code of rules relative to both devolution and administration of the estates of nonresidents. The application of such a rule of construction to section 3659, the language of which is equally as broad as that of section 3687, would render section 3648 nugatory even as to resident testators, a result manifestly wrong. In Stromberg v. Stromberg, 119

Minn. 325, 138 N. W. 428, the true rule was applied to the very section now under consideration, the question there involved being whether the widow of a nonresident could claim the personal property allowance made by our statute to a surviving spouse.

"This section," said Mr. Justice Holt, at page 327,[1] "must be construed in connection with section 3653 above cited, and also sections 3714 and 3715 of the Code."

Section 3653 is in the same category with section 3658, both being under the general head of "Descent of Property," and if the one authorizes a deduction from the personalty not expressly allowed by section 3687, it is difficult to see why the other does not allow to the surviving spouse the share in the realty thereby prescribed, even though such share could, as done by the appellants, be denominated a "deduction." Such share, however, is not a deduction to be made before distribution, but an inherited interest, and hence is not excluded by failure to include it in the deductions expressly allowed. Moreover, in providing that intestate personalty should be distributed according to the laws of the domicil, it seems to have been thought necessary to authorize the deduction of expenses of administration and debts here allowed; but such an express authorization was manifestly unnecessary as to realty, and hence the provision for deductions therefrom before distribution was couched in the phrase, "not sold in the course of administration," to which we might add, "for debts and charges to which it is subject under the laws of this state." In short, no specific deductions from the realty are expressly authorized, because the last must of necessity remain here and is to be assigned according to the laws of this state, subject to all charges allowed by our laws; and no deduction of the statutory one-third of the surviving spouse is provided for, because it is not a deduction but an inherited interest.

Nor does the direction that the property shall be distributed according to the will stamp section 3687 as a statute of devolution and therefore require it, by reason of its special character as dealing with a particular kind of estate, to be taken by itself and without regard to the general provisions of section 3648. How else could it better be expressed that "in all cases of administration in this state of the

[1 138 N. W. p. 429.]

estates of nonresidents," the will shall be given the "same force and effect as if originally allowed" in this state? Neither is such character to be imputed to it from the directions as to the distribution of intestate property; for thereby the statute merely propounds rules of conflict of laws, codifying as to personalty the rule laid down in Putnam v. Pitney, supra, and declaring as to realty the existing law. In our opinion section 3687 must be taken in the setting given it by the Code, as dealing solely with the administration of estates, and likewise in connection with the general statutes of descent and distribution; and when so construed it merely declares that the real property disposed of by the will of a nonresident shall be assigned according to the terms of the will, subject, however, to such restrictions and conditions as are imposed by any other statute of this state upon testamentary dispositions of land generally, unless there is some particular reason why the latter should not be read into the former.

Is there, then, any reason, not found in the express terms of the two statutes, why section 3648 should not be read into section 3687? The appellants answer this question in the affirmative, argumentatively assigning to section 3648 an inherently domestic character that limits its operation to resident testators. It is settled in this state, however, that no presumption of exclusion of nonresidents will be indulged where the terms of the statute are general (Renlund v. Commodore Mining Co. 89 Minn. 41, 47, 93 N. W. 1057, 99 Am. St. 534; Brunette v. Minneapolis, St. P. & Sault Ste. Marie Ry. Co. 118 Minn. 444, 445, 137 N. W. 172), and we find nothing in our public policies or elsewhere which takes the statute now under consideration out of the rule. As to the contention to the contrary, based upon the provisions of section 3649, relating to renunciation, it is sufficient to call attention to the nature of this section. It confers no substantive right, but merely provides for a statutory estoppel to set at rest, after the expiration of the prescribed period, all question as to whether the survivor has elected to take under the will and not under the statute, the failure to elect within such time being "equivalent to an assent to the disposition of the property as

fixed by the will." Nordquist v. Sahlbom, 114 Minn. 329, 330, 131 N. W. 323.

Such being the case, there can never arise any question of taking both under and against the will, save such as pertains to the construction of its terms, nor any complications by reason of the failure of the statutes of other states to provide for renunciation. The right of election is personal to the survivor (Nordquist v. Sahlbom, supra) and, like other personal rights, is subject to waiver and estoppel, whether statutory or otherwise. A renunciation of the will in the manner prescribed by the statute would, therefore, estop the survivor from claiming thereunder either here or elsewhere, just as an affirmative election in favor of the will made in another state (see Washburn v. Van Steenwyk, supra) will preclude a claim under the statute here. In our opinion, no satisfactory reason can be advanced why the general rule should not be applied, and we hold, therefore, that Doctor Owsley had the right to renounce the will and claim under the statute, which conclusion is also supported by the attitude of the court, if not, indeed, the decision, in Howe Lumber Co. v. Parker, 105 Minn. 310, 117 N. W. 518.

2. The next position taken by the appellants is that there has been no effectual renunciation of the will by Doctor Owsley; the grounds of this position being that the law of Virginia does not authorize such a renunciation, and that no attempted renunciation there was proved here within six months after the issue of ancillary letters by the probate court of St. Louis county. This compels the erroneous assumption that the law of the domicil controls in the matter of renunciation. The laws of this state, and not those of Virginia, must govern the descent of real property located here. Washburn v. Van Steenwyk, supra; Putnam v. Pitney, supra. No statute of another state can, either directly or indirectly, take away an inheritance given by a statute of this state in lands here situated; and the existence or nonexistence in other states of statutes relative to election can, in such case, be material only upon a question of common law estoppel. The renunciation contemplated by section 3649 must, therefore, be made in the probate court of the state in which the will is proved, or, if it has already been proved else-

where, in which it is allowed and filed.    The renuncation filed by Doctor Owsley in the probate court of St. Louis county was sufficient.

3. Appellants insist that even if it be held that Doctor Owsley had the right to renounce the will and legally and effectually did so, yet he cannot take a one-third interest in the land here involved, nor be allowed any portion of it.    The hypothesis for this conclusion is that the property is "ancestral," and hence that its devolution, not testamentary, is controlled by R. L. 1905, § 3652, which provides:

"The degree of kindred shall be computed according to the rules of the civil law, and kindred of the half blood shall inherit equally with those of the whole blood in the same degree, unless the inheritance comes to the intestate by descent, devise, or gift from one of his ancestors, in which case all those who are not of the blood of such ancestors shall be excluded from such inheritance."

We cannot adopt this theory.    Plainly stated, a holding in accordance therewith would, we think, be revolutionary, if, indeed, not leading to the exclusion of a surviving spouse from inheritance as statutory heir in all cases where the property came to the intestate from one of his ancestors.    It would likewise ignore the established rule of construction, applicable not only to every phase of the present inquiry but also to the preceding questions, that statutes relating to the same subject must be construed with reference to each other.    In the case before us, no relationship existed between respondent and those from whom the property was derived, and no computation of "degrees of kindred" is involved.    The rights of the respondent are fixed by section 3648, and in no wise are affected by section 3652.    See Rowley v. Stray, 32 Mich. 70; Estate of Kirkendall, 43 Wis. 167; Watson v. St. Paul City Ry. Co. 70 Minn. 514, 73 N. W. 400.

Before leaving the present and preceding points, we think it may be confidently stated as to both, that the fundamental weakness in appellants' contentions thereon consists in the ignoring of the cardinal intent of the legislature in adjusting the reciprocal rights of the husband and wife in the property of the other.    That equality, and

protection of each from the acts of the other was the legislative objective, is conclusively shown by our statutes in this regard. See R. L. 1905, §§ 3647, 3648, 3653, 3335, 3338, 3450, 3607.

4. Prior to her death Mrs. Owsley executed nine long-term so-called mining-leases, upon certain of her Minnesota lands, running, approximately, 50 years, and in which Doctor Owsley joined. The appellants, invoking such joinder as a sufficient written consent, under section 3648, to the disposition of the property so made by Mrs. Owsley, contend that the royalties accruing or to accrue after the death of Mrs. Owsley, should be distributed according to the will. They insist that the contracts in question represent "conditional sales of the ore covered thereby," and that "the price to be paid therefor is personalty and, as between the decedent's estate and the respondent, subject in any event to disposition by the decedent through her will," or, in other words, that the royalties reserved are not rents, but instalments of the purchase price.

On the other hand respondent, relying largely upon State v. Evans, 99 Minn. 220, 108 N. W. 958, 9 Ann. Cas. 520, takes the position that, though in some cases and for certain purposes contracts of this general character are treated as sales of ore in place, those made by Mrs. Owsley cannot be held such, but must be considered to be mere leases the proceeds of which follow the title to the land as incident to the ownership thereof, thus, under the doctrine of relation, giving Doctor Owsley the right to one-third thereof from and after Mrs. Owsley's death.

The provisions of the instruments in question are substantially the same. After reciting the consideration as being one dollar and other valuable consideration, together with the covenants, etc., made and assumed by the "lessee," they purport to lease, demise, etc., the property covered thereby for the stated term, "for the purpose of exploring for, mining, taking out, removing therefrom the merchantable iron ore -* * * which is or may hereafter be found on, in or under said lands," with the right to construct the buildings, etc., necessary to mining operations. The lessee agrees to pay a stated royalty per each gross ton of ore removed, during the full term of the contract, subject to a condition that a minimum amount

shall be removed annually, the performance of this condition being insured by an agreement to pay a quarterly "advance royalty or ground rent," with an equalizing provision automatically adjusting the amounts of such payments to the quantity of ore taken out during the several quarters of the year. The contracts further provide for the weighing of the ore removed, and the lessee agrees to operate the mines in a workmanlike manner and without waste; to pay taxes, and to keep the property free from mechanics' liens; while the lessors warrant their right to lease. They also contain directions as to the place, etc., of payment of royalties, and the following further provisions: That the lessee may terminate the contract on 30, 60 or 90 days' notice, and the lessor in case of the lessee's default; provisions relative to operation of the mines pending any disagreements which may arise; provision for a lessor's lien upon the ores mined, etc.; a reservation of the right to the lessor to enter to inspect; that on termination of the contract the lessee may remove his improvements, but must leave the tramways and supports necessary to the operation of the mines; a provision covering the possibility of the discovery of minerals other than iron, and the royalties to be paid thereon; and, finally, that the covenants shall run with the land and be binding upon the heirs, etc., of the lessor.

We find no substantial difference between these instruments and the one involved in the Evans case, supra; and on the main proposition this case is ruled thereby. The nature of contracts of this character was there fully considered, and the decision was grounded upon the conclusion that the contract there in controversy was a lease and not a sale of a portion of the corpus, this determination being reached "in view of the use of mining leases for centuries as a means whereby mines have been opened and worked." See Hendrix v. McBeth, 61 Ind. 473, 28 Am. Rep. 680; Bibb v. Bubb, 201 Pa. St. 212, 50 Atl. 759; Denniston v. Haddock, 200 Pa. St. 426, 50 Atl. 197; Koen v. Bartlett, 41 W. Va. 559; Traer v. Fowler, 23 S. E. 664, 31 L.R.A. 128, 56 Am. St. 884, 144 Fed. 810, 75 C. C. A. 540. As between Mrs. Owsley's estate and the persons claiming under her will on the one hand, and Doctor Owsley, claiming under section 3648, as her statutory heir, it must be held that the contracts

under consideration are leases; and hence that he is entitled to one-third of the royalties accruing and to accrue thereunder after her death, for it is well settled that, in the absence of a reservation to the contrary, rents follow the title to land. 1 Tiffany on Real Property §§ 47, 360, 24 Cyc. 1172; 11 Am. & Eng. Enc. (2d ed.) 841.

Judgment affirmed.