J. T. Browning, C. A. Bryson, Mrs. H. L. Lacey, M. T. Bryson, J. H. McDonald, Mrs. S. A. Sillix, and T. W. Bryson, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 25154–25158, 25171, 25172.    Promulgated May 10, 1929.

*J. M. McMillan, Esq.*, for the petitioners.
*Brice Toole, Esq.*, for the respondent.

OPINION.

MILLIKEN: Petitioners' first contention is that under the assignment of May 24, 1922, they acquired no interest in the oil and gas underlying the tract of land which was and still remains the property

of the donors; that all they did acquire was an interest in the income from the property and that this income was taxable to the donors alone. The solution of this question depends upon the construction of the contract of assignment. In *J. E. Murphy*, 9 B. T. A. 610, we held that the owner of the land possessed a property right in the oil and gas underlying his land, a right which he could convey, and that where he had owned the property for over two years prior to a sale, the sale of such property right constituted a sale of a " capital asset " within the meaning of section 206 of the Revenue Act of 1921. On the other hand, we held in *Henry L. Berg et al.*, 6 B. T. A. 1287, that an ordinary oil and gas lease was not a sale of oil and gas in place and that oil and gas royalties constituted gross income.

Giving to the contract of gift involved herein a literal interpretation, it would seem that it was a conveyance for the term of one year of part of the donors' interest in the oil, gas and other minerals in and under the land of the donors. If it was a conveyance of a part of the donors' interest in the oil and gas under the land, then the interest conveyed was only 1/16 of a 1/8 interest in the minerals, or, in other words, 1/128 interest. It is pertinent to a construction of this paper to take notice of the fact that prior to the date of the gift a lease had been granted and of the further fact that the term of the gift was for only one year, during all of which period the lease was in effect. The immediate purpose and result of the gift was to vest in petitioners undivided interests in the royalty. Taking into consideration the conflicting provisions of the contract of gift, the circumstances under which it was executed, its immediate result, and the apparent fact that the contract was inartificially drawn, we feel impelled to adopt the construction placed upon it by the parties to these proceedings in their stipulation, which is, " On May 24, 1922, W. J. Bryson and his wife assigned to each of the petitioners herein one-sixteenth of their one-eighth retained royalty in the oil, gas or other mineral that might be produced from the said 160 acres of land in the year 1922."

The initial issue is what the interest of the donors was, a part of which they assigned to petitioners. Did the donors assign a property right which was productive of income, or did they assign income only? If the assignment was of rents, it would fall within the latter classification. The nature of a retained royalty interest in oil and gas was before the Board in *Henry L. Berg et al., supra*. It was there contended that an oil and gas lease on land in Arkansas constituted a sale of capital " assets " within the provisions of section 206 of the Revenue Act of 1921. This contention we denied. We there said:

The proceeds of minerals, and by minerals we include oil and gas, obtained from mining operations constitute gross income to the owner of the leased premises, and this is true where the minerals are leased. The result of an

ordinary mining lease, such as we have here, is merely to transfer the cost of operations from the owner to the lessee. The operation remains the same and the proceeds of the operation are divided between the lessee and the lessor, the portion of the minerals and amounts paid to the lessor pursuant to the lease usually being termed " royalty." Gross proceeds extracted in the usual course of mining operations have long been considered gross income. *Stratton's Independence* v. *Howbert*, 231 U. S. 399; *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; *United States* v. *Biwabik Mining Co.*, 247 U. S. 116.

In *Von Baumbach* v. *Sargent Land Co.*, cited in the above excerpt, the Supreme Court said:

In the case of *State* v. *Evans*, 99 Minn. 220, 108 N. W. 958, 9 Ann. Cas. 520, that court, after a review of the English and American cases, said (page 227) :

" The propriety of a lease for the purpose of developing and working mines is recognized by all of the cases, and the rule established by the great weight of authority that such leases do not constitute a sale of any part of the land, and, further, that iron or other materials derived from the usual operation of open mines or quarries constitute the rents and profits of the land, and belong to the tenant for life or years, and to the mortgagor after sale on foreclosure, and before the expiration of the time for redemption. The rule, however, has no application to unopened mines, in the absence of a contract, express or implied, for opening and leasing them."

The same doctrine was held in *Boeing* v. *Owsley*, 122 Minn. 190, 142 N. W. 129, and in the late case of *State* v. *Royal Mineral Asso.*, 132 Minn. 232, 156 N. W. 128, in which the decision of the circuit court of appeals in this case, that such leases were merely conveyances of the ore in place, was brought to the attention of the court, and that conclusion expressly denied, the supreme court of Minnesota saying:

" We adhere to the doctrine of the *Evans* and *Boeing* Cases, and hold these instruments leases. It follows logically that the amounts stipulated to be paid by the lessees are rents, and they were expressly held by this court to be rents in the *Boeing* Case, supra, — a case which involved a construction of the very leases now before the Court. They are ' the compensation which the occupier pays the landlord for that species of occupation which the contract between them allows.' Lord Dennison, in *Reg.* v. *Westbrook*, 10 Q. B. 178, 205, 2 New Sess. Cas. 599, 16 L. J. Mag. Cas. N. S. 87, 11 Jur. 515, 22 Eng. Rul. Cas. 623."

In *United States* v. *Biwabik Mining Co.*, also cited in the same excerpt, the Supreme Court said:

In the *Sargent Land Company* Case it was pointed out that the courts of Minnesota, certainly familiar with the physical characteristics of the ore deposits involved, had in a series of cases held these instruments to be leases, and that the royalties agreed to be paid were rentals in compensation for the privileges granted the lessee. We held the conclusion of the Minnesota courts to be warranted by reason and authority. 242 U. S. 503, and cases cited in margin, page 518.

In *John T. Burkett*, 7 B. T. A. 560, we were again confronted with the same question presented in the *Berg* case, and, following that decision, we again held that an oil and gas lease did not constitute a sale of oil and gas in place even though in addition to the usual royalty there was a cash consideration of $175,000. The Board's deci-

sion was affirmed on March 20, 1929, by the Circuit Court of Appeals for the Eighth Circuit, *sub. nom. John T. Burkett* v. *Commissioner of Internal Revenue*, 31 Fed. (2d) 667. Among other things, the court said:

Also, this case is ruled by *United States* v. *Biwabik Mining Co.*, 247 U. S. 116, and *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503. Both of those cases involved taxing statutes. Those cases defined this character of instruments as grants of privileges and not as conveyances of the mineral (iron ore) in place. We cannot see why the character of the instrument is changed or affected by the fact that the mineral is of a character (oil and gas) which was not susceptible of conveyance in place. In either case, the same rights are given and the same results are intended and do follow. What the landowner *could* or *could not* grant does not control the nature of what he *did* grant.

The rule that such mineral leases, including oil and gas leases, do not constitute a sale of minerals in place, applies in all Federal tax cases irrespective of the construction placed on such leases by state courts. Thus, in the *Berg* case, after making excerpts from the opinion in the *Sargent Land Co.* and *Biwabik Mining Co.* cases, we said:

Upon the other hand, the gross proceeds of minerals extracted in mining operations have been considered gross income without reference to cost since 1913 and all of the Revenue Acts passed since that time and the decisions of the courts have been upon this basis. It thus appears that this theory is one embodied in the Revenue Acts and exists *irrespective of what the laws of various States may be* relative to mining. (Italics supplied.)

Subsequent to the decision of the *Berg* case, the United States District Court for the Eastern District of Pennsylvania rendered its decision in *Rosenberger* v. *McCaughn*, 20 Fed. (2d) 179. The facts in that case were that one Weiss, who was the owner of certain coal lands in the Commonwealth of Pennsylvania, in the year 1889 entered into a coal lease covering the lands upon a monthly rental, reckoned on coal raised and prices realized at the breaker. The questions presented were whether this contract resulted in a sale, as of the date of the lease, of all the coal in place, in which case any gain from the sale was not taxable, since the sale was made prior to March 1, 1913; or whether the proceeds from the lease constituted rents, in which case they were taxable as gross income. The court, after pointing out that it was the established law laid down by the courts of Pennsylvania that such a lease resulted in a sale of coal in place, and after referring to the Supreme Court decisions which we cited in the *Berg* case, said:

The conclusion reached is that the courts of the United States do not accept the Pennsylvania view of " so-called mining leases," and that, in the construction of a tax law of the United States, the law of the state in which the land is situate need not be followed, and that " so-called royalties " are income.

This decision was affirmed by the Circuit Court of Appeals for the Third Circuit in *Rosenberger* v. *McCaughn*, 25 Fed. (2d) 699, and

certiorari denied; 278 U. S. 604. To the same effect see *John T. Burkett* v. *Commissioner of Internal Revenue, supra.*

From the above it appears that for Federal income-tax purposes ordinary mineral leases, including oil and gas leases, convey no title to minerals in place and that the proceeds of such leases are, in the words of the Supreme Court, "rentals." We are of the opinion that the assignment in this case was of income.

This brings us to the next phase of the case, which is whether the donors, having retained the title to the income-producing property, can relieve themselves wholly or partially of the tax on their income by making an irrevocable gift thereof to others. This is pertinent, since if all rentals arising from a lease result in taxable income to the grantors, none of them are taxable to petitioners. On this question the Board has spoken often and with emphasis. In the late decision in the proceeding of *Julius Rosenwald,* 12 B. T. A. 350, the question presented was whether Rosenwald was taxable on income which he had previously gratuitously assigned to a charity but where he had retained title to and ownership of the income-producing property. Among the assignments was one assigning for a period of five years the interest to become due on a loan and also an assignment for the same period of all the rents accruing under a lease of real property. The borrower and the tenant were notified in writing of the assignments and both agreed in writing to pay to the charity. We make the following excerpt from that opinion:

We come now to the items of interest on a promissory note, rents from certain properties owned by the petitioner and Liberty bond interest purported to have been assigned or given to the Julius Rosenwald Fund. Since all of the facts are fully set forth in the findings of fact herein, we do not deem it necessary to repeat them here except so far as they may become pertinent to the discussion.

In *Ormsby McKnight Mitchel,* 1 B. T. A. 143, the taxpayer was a member of a partnership, having a 51 per cent interest therein, and he entered into an agreement with his wife, whereby, for a valuable consideration, she should receive one-half of the profits accruing to the taxpayer from that partnership, also that she should be liable to pay him one-half of the losses which might be sustained by reason of his interest in the partnership. It was not contended in that proceeding that his wife thereby became a member of the partnership. The question raised there was whether by virtue of that agreement one-half of the income of the taxpayer covered by the agreement with his wife constituted income to him within the meaning of the taxing statutes. The Board said in that case, "The income from taxpayer's interest in the partnership is first income to him, and no matter how he tries to dispose of it or does dispose of it, it is taxable to him as income from his interest therein." The Board further said, "If the contention made should prevail, the taxing law would be a nullity and an act of Congress imposing taxes made impotent at the will of the taxpayer. If he can escape taxation on one-half the profits of the partnership by agreement, there is no reason why, by another agreement he can not escape taxation on the other half; and if this taxpayer can do so there is no

end to the agreements which may be made, and income as such will cease to be an object of taxation."

In *American Telegraph & Cable Co.*, 2 B. T. A. 991, the taxpayer leased all its properties for a certain rental, the lessee to pay the entire rental directly to the stockholders of the lessor as dividends. The taxpayer there contended, *inter alia*, that none of the payments stipulated in the lease between itself and the lessee constituted income to it. The Board said in holding the income taxable to the lessor, after considering a number of cases cited *infra*, "The Telegraph Company [meaning lessee] owes and pays rent to the taxpayer. The Telegraph Company is the agent of the taxpayer distributing that rent among its stockholders."

In *Samuel V. Woods*, 5 B. T. A. 413, the petitioner owned certain property in fee which was leased to one Stafford and others who subleased to the Big Run Coal Co. That lease provided that the lessee pay certain portions of the rents and royalties as they became due to third persons. The Board said, citing *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, 249 Fed. 726; certiorari denied, 246 U. S. 671, "It is clearly authority for taxing the owner in this case where, so far as the records show, he merely designates another to receive his pleasure. Conceded that he did not have actual possession of the amounts so paid, possession is not the determining factor of income even on the cash receipts basis." The Board said further, "Such a voluntary act in anticipation of actual receipt and before the income exists can only affect the income when it actually arises, and in our opinion it may properly be treated as coming to him and immediately disposed of." In the case of *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, *supra*, the corporation leased its properties and agreed that the rental should be paid to its stockholders and bondholders. The taxpayer there contended, as in the instant case, that it did not receive the rents and did not have the right to receive them and consequently the amounts should not be included in its taxable income. The court said:

"It is true that the rent of its road does not go into the plaintiff's treasury and that it has no means of withholding the tax from it. It is also true that the rent reserved by the lease is paid by the lessee in fixed sums to third parties. All the same, the rent is the property of the plaintiff, and remains such, though by the terms of the lease paid out to others, whose rights are derived through it. While the rent is a debt of the lessee to the lessor, it is as between the lessor and its stockholders, the lessor's income, out of which the dividends, if any, are to be paid.

"The application of the rent under the lease is a mere labor-saving device, the effect being exactly the same as if it be paid to the lessor and by it paid out as far as necessary to bondholders for interest, and the surplus in dividends to its stockholders. The description of the fixed sum to be paid by the lessee of 8 per cent to the lessor's stockholders as a dividend shows that the payment is made as agent of the lessor."

Also see *Blalock* v. *Georgia Ry. & Electric Co.*, 246 Fed. 387; *Anderson* v. *Morris & Essex R. R. Co.*, 216 Fed. 83; *West End Street Ry. Co.* v. *Malloy*, 246 Fed. 625; *Houston Belt & Terminal Ry. Co.* v. *United States*, 250 Fed. 1; *Boston Terminal Co.* v. *Gill*, 246 Fed. 664; *Hamilton* v. *Kentucky & Indiana Terminal R. R. Co.*, 289 Fed. 20.

In *Arthur H. Van Brunt*, 11 B. T. A. 406, we said:

When the instrument is considered as a whole it seems evident that there was an assignment of income from property rather than an assignment of the corpus of such property. The instrument states that a life interest is assigned to the wife so that she is directly entitled to collect only the income from cer-

tain securities during the life of the agreement and also the income from any and all leases in which petitioner is the lessor. It further provides that the wife is entitled to collect all other salaries or earnings of petitioner except that from his law firm. Cf. *Bing* v. *Bowers*, and *Bing* v. *Anderson*, 29 Fed. (2d) 450. *Fred W. Warner*, 5 B. T. A. 963. Upon the face of the instrument the Board is of the opinion that the Commissioner correctly held that the rents and dividends in question constituted income to the petitioner.

See, also, *Yale Kneeland*, 1 B. T. A. 150; *Alexander S. Browne*, 3 B. T. A. 826; *Fred W. Warner*, 5 B. T. A. 963; *Alfred LeBlanc*, 7 B. T. A. 256; *M. C. Garber et al.*, 11 B. T. A. 979; *Maud Dunlap Shellabarger*, 14 B. T. A. 695. While all of the above cases are in point, the *Rosenwald* and *Samuel V. Woods* cases are on all fours with the instant proceedings in so far as those cases involve the gratuitous assignment of rents from property the title to which the donors retained. The assignments in the above cases were just as binding and irrevocable as the assignment now before us.

Under the above authorities it is our opinion that the rents arising from the oil and gas lease set forth in the assignment were wholly taxable to the grantors and that no part of them was taxable to petitioners.

These proceedings are distinguishable from *J. V. Leydig*, 15 B. T. A. 124, and *William I. Paulson*, 10 B T. A. 732, in that in those cases the assignments had no limited term, whereas the assignment involved in these proceedings is limited to the term of one year, thus disclosing an assignment of no part of the income-producing property, but only of the royalties as they accrued therefrom. They are also distinguishable from those cases involving the assignment of income from trust property such as *Edith H. Blaney*, 13 B. T. A. 1315, and *Marshall Field*, 15 B. T. A. 718, in that in those cases the legal title and control of the income-producing property were not in the assignor but in the trustee.

The conclusion which we have reached makes it unnecessary to consider the other contentions made by petitioners.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL and MURDOCK concur in the result.

---

SIEFKIN, dissenting: It seems to me that the stipulation of the parties in these proceedings that "W. J. Bryson and his wife assigned to each of the petitioners herein one-sixteenth of their one-eighth retained royalty interest in the oil, gas or other mineral that might be produced from the said 160 acres in the year 1922" does not justify the decision that the assignment was of income. It is at that point of the opinion that a distinction, if any, is to be made

between these proceedings and the situation considered in the *Leydig* and *Paulson* cases, as well as the *Blaney* and *Marshall Field* cases. The distinctions drawn in the prevailing opinion seem to me to be no distinctions at all and constitute an attempt to overrule those cases without saying so. If the subject matter, a royalty interest in an oil and gas lease, is susceptible of present sale, it is clear to me that it may also be the subject of a completed gift and in either case, I believe, the income flowing from the property becomes that of the grantee. That the term is limited makes no difference—that limitation meaning only that a smaller estate is created in the grantee.

TRUSSELL agrees with this dissent.