BOSTON TERMINAL CO. v. GILL (three cases).

(Circuit Court of Appeals, First Circuit.   October 25, 1917.)

Nos. 1277–1279.

INTERNAL REVENUE &9—EXCISE TAX ON CORPORATIONS—CORPORATIONS "OR-
GANIZED FOR PROFIT"—"ENGAGED IN BUSINESS."

The Boston Terminal Company was organized under a special statute
(St. Mass. 1896, c. 516) closely defining its organization and powers for
the purpose of building and maintaining a union station.   As in effect re-
quired by the act, its capital stock, or $500,000, was subscribed for by
the five railroad companies named therein, in equal shares.   Such com-
panies were also required to use the station, and to pay therefor, in pro-
portion to the use made of the same, such amounts as should be necessary
to pay the expenses of the corporate administration and of maintaining
the station, the interest on the company's bonds, which amounted to $14,-
500,000, and dividends on its stock not exceeding 4 per cent.   Such com-
panies were also required in case of foreclosure to pay any deficiency of
the bonded debt in the same proportions.   The company received a sub-
stantial income aside from payments from the railroad companies from
facilities furnished to the traveling public and from leases and conces-
sions.   It had never paid any dividends on its stock.   It was required to
pay a state franchise tax on its capital stock, but the station property
was assessed to the railroad companies.   Held, that the company was a
corporation "organized for profit" and "engaged in business," within the
meaning of section 38 of the Tariff Act of August 5, 1909, c. 6, 36 Stat.
112, and subject to the special excise tax thereby imposed; that its gross
income under the act included all sums received from the railroad com-
panies, and that it was entitled to a deduction therefrom on account of
interest paid, under clause 2, to the extent only of the interest on so
much of its debt as equaled its capital stock of $500,000.

In Error to the District Court of the United States for the District
of Massachusetts; Frederic Dodge, Judge.

Actions at law by the Boston Terminal Company against James D.
Gill, Collector of Internal Revenue (three cases).   Judgment for de-
fendant, and plaintiff brings error.   Affirmed.

The following is the opinion of Dodge, Circuit Judge, in the court
below:

In these three actions at law the plaintiff seeks to recover back payments
made by it to the defendant collector which had been assessed upon and col-
lected from the plaintiff as taxes due from it under the federal Excise Tax
Statute of August 5, 1909, § 38 (36 Stats. 112–117).   The first suit relates to
the taxes so collected for the year 1909; the second and third to the taxes for
the years 1910 and 1911, respectively.

The parties waive trial by jury and have submitted the cases to the court
upon a statement of agreed facts, filed November 22, 1915, covering all
three cases.   I therefore find the facts to be as set forth in said statement,
which is to be referred to in connection with this opinion.   The agreement
provides that the court may draw inferences of fact.

1. The first question to be determined is whether the plaintiff corporation,
which had "a capital stock represented by shares," was a corporation "organ-
ized for profit" within the meaning of the act, and therefore subject to pay
annually the special excise tax provided for by section 38, with respect to the
carrying on or doing business by it during the years here in question.

The plaintiff corporation was established by, organized under, and its
operations conducted in accordance with, a statute of Massachusetts passed

June 9, 1896, and entitled "An act to provide for a union station for passengers on railroads entering the southerly part of the city of Boston." It forms chapter 516 of the Massachusetts acts of 1896. It is set forth in full as part of the agreed statement.

The five railroads named in section 2 of this statute subscribed for and paid in $100,000 each of the $500,000 capital stock therein provided for. The Boston & Albany Railroad Company was leased to the New York Central & Hudson River Railroad Company in 1900, and thereafter operated by the lessee; the New England Railroad Company was leased to the New York, New Haven & Hartford Railroad Company in 1898, and was thereafter operated by said lessee and subsequently merged with it in 1908; the Boston & Providence Railroad Company had been leased to the Old Colony Railroad Company in 1888, was operated by said lessee when the statute was passed, and thereafter until 1893, when the New York, New Haven & Hartford Railroad Company became lessee of both the last-mentioned railroads and thereafter continued to operate them. During the years here in question, therefore, the actual control of the five railroad companies mentioned in the statute was vested in the New York Central & Hudson River Railroad Company and the New York, New Haven & Hartford Railroad Company, which two companies thereafter complied, on behalf of their respective lessors, and the last-mentioned company on its own behalf, with the provisions and requirements of the above statute.

The plaintiff company proceeded under such statute to acquire the necessary land and to build thereon the contemplated union station, which was thereafter used by all the five railroads named or their respective lessees. The land was acquired and the station built with the money paid in by them as capital stock, and with money raised by the issue of its mortgage bonds, under section 4 of said statute, to the amount of $14,500,000.

To each of said five railroad companies there was issued for the $100,000 paid in by it 1,000 shares of the plaintiff company's stock, each share of the par value of $100, making in all the total capital stock authorized by the Massachusetts statute. Each railroad company has since retained all the stock issued to it as above and now owns it. While they thus became and now are the only holders of all the shares into which the plaintiff company's stock is divided, the nature of said stock in respect of the rights belonging to and the liabilities incurred by its owners is made to differ widely from that belonging to ordinary stock in a business corporation, by the following provisions of said Massachusetts statute, which are believed to be the only provisions especially significant upon the question whether or not the company is to be regarded as "organized for profit," within the meaning of the federal act.

(a) As to the issue of the stock, while the statute provided only that the above-named railroads might take and pay for it as above, without requiring them to do so, or prohibiting its issue to others, or in amounts different from the above, it authorized the company to acquire the land necessary to its operations only when each said railroad should have taken and paid for the amount of stock allotted to it by the statute and the company's entire capital should have been so paid in by them.

(b) Ownership of the stock was not, of itself, to carry with it any voting power in the choice of the company's officers. Management of the company, instead of being in the hands of directors chosen by its stockholders, was placed by the statute in the hands of five trustees, one to be appointed by each of said railroads, each trustee to be a director of the railroad appointing him, and to hold his office as trustee at its pleasure. Any vacancy was to be filled in like manner.

(c) The liability of each railroad for the company's debts and liabilities was, by the statute, not to be confined to the ordinary liability of a stockholder in a business corporation. The issue of bonds, to such amount as might be necessary and approved by the railroad commissioners, was authorized, and an issue largely exceeding the capital stock in amount was clearly contemplated; such bonds to be secured by mortgage of the land to be acquired and the station to be thereon erected by the company. The five railroads who

were to take the stock as above were required, in the event of foreclosure of such mortgage and a sale of the property mortgaged for less than the principal and interest of the mortgage debt, to make good to the bondholders the amount of such deficiency, each to contribute thereto, not in the proportions wherein they had taken and paid for the stock (one-fifth each), but each in proportion to the use which it or its lessees might then have of the property.

(d) The company was not given unrestricted power in the operations which the statute authorized it to undertake. Plans prepared by the company for the construction of the station it was to build on such land as it might take for the purpose were to be approved or changed as ordered by the municipal authorities of Boston with the concurrence of the Massachusetts railroad commissioners. Rules made by the company for the use of the completed station were to be subject to modification by said railroad commissioners upon application of the Boston municipal authorities or of the railroads themselves.

(e) The railroads who were to take the company's stock as above were required to use the completed station it was to build, instead of their respective terminal facilities then in use. For such use the statute further required them to make payment to the company, such payments to be part of their operating expenses. The respective proportions in which the statute required each to pay were to depend upon the proportionate use made by it of the new facilities, not upon the proportion of stock held; and were to be fixed by agreement, or, in case of failure to agree, by said railroad commissioners; with provisions for revision, either by agreement or said commissioners, at intervals of not less than three years. What the payments required as above from the railroads were to cover is expressly provided by the statute; which provisions, though not very directly bearing upon the rights and liabilities attending the ownership of stock in the company, are next stated.

(f) The payments required to be made by said railroads for their use of said station were to be made monthly to said company for its use. Said railroads were to pay (section 10)—

Such amounts as may be necessary to pay the expenses of its corporate administration and of the maintenance and operation of said station, and of the facilities connected therewith and owned by said terminal company, including insurance and all repairs, all taxes and assessments which may be required to be paid by said terminal company, the interest upon its bonds or other obligations issued under the provisions of this act, as the same shall become payable, and a dividend, not to exceed 4 per cent. per annum, upon its capital stock.

It is to be noticed in connection with these provisions that in its last section (25) the statute required the company to pay a franchise tax upon the true market value of its capital stock without any deduction whatever. But the plaintiff company's real estate used by said railroad companies is by the same section directed to be assessed to them, not to said company, and the taxes thereon are to be paid, not by the company, but by said railroad companies in the proportions wherein each should at the time be making use thereof.

Although neither railroad company has sold any of the stock taken by it as above, the statute nowhere prohibits such sale; and no obstacle to such sale at any time appears to exist, other than the practical difficulty of obtaining a purchaser for stock without voting power, entitled to dividends only in case trustees representing the railroads who would have to furnish the money to pay them if declared should so determine, and limited to 4 per cent. even in that event. It cannot be said that upon no terms within the power of its present owners to offer could the difficulty ever be got over, nor can it be said that the statute contemplates no sale of the stock in any event. That its owners, whether said railroad companies or other persons, might at some time and in some manner become entitled to dividends upon it, is a possibility for which express provision is made. The organization is therefore for profit, at least upon contingencies which, however remote, are not wholly impossible of occurrence.

The plaintiff says that the railroads, its only stockholders as above, would themselves have to pay into it the amount of any dividend declared, only to receive back again as dividends the amounts so paid in. This would be true if each of the five used the station in the same proportion as that which its holding of stock bears to the entire capital. But it appears that, during the three years here in question at least, the only use made by the New York, New Haven & Hartford Company of the station has been as lessee or owner of three of the five railroads named in the statute, while the only other railroad making use of it has been the Boston & Albany, leased to the New York Central; so that the payments to be made according to actual use have been in the proportions one-fourth by the latter railroad and three-fourths by the New Haven on behalf of its three lessors and itself. The latter railroad, on behalf of itself and its lessors, would thus have to pay in only 75 per cent. of any amount used for dividends, while it would be entitled to 80 per cent. (four-fifths) thereof in dividends upon its and their stock. It can hardly be said, therefore, that the prescribed organization permits no profit in any event to any original stockholder.

But apart from any question as to dividends, the agreed facts show that the total cost of corporate administration, maintenance, and operation, etc., is not in fact wholly borne by the five stockholding railroad corporations. The provisions of section 10 of the statute requiring payment by them of such amounts as might be needed to pay the expenses of administration, etc., have been cited above. From paragraph 5 of the agreed facts it appears that the plaintiff company has leased space in the station and has granted concessions and licenses therein to persons other than said stockholding railroads, for the transaction on their own account of various kinds of business whose transaction there might accommodate passengers there arriving or thence departing, but was not otherwise connected with its business; the amounts received by it in payment for the privileges in the station so granted being applied in reduction of the expenses of administration, etc., to be met as above by the stockholding railroads. And, as also agreed in paragraph 5, the plaintiff has also itself operated facilities and supplied power, heat, light, gas, etc., manufactured by it for use in said station to such other persons as well as to said railroads, deriving revenue directly therefrom, which has been applied in like manner as above.

By means of revenue thus obtained by the company, not from said stockholding railroads but from others, the cost to them of the administration, maintenance, and operation for which the statute required them to provide has been very materially reduced, as paragraph 6 of the agreed facts more fully shows. There is no suggestion that the above dealings by the plaintiff company with others than said railroads are beyond its statutory powers. They were obviously for the better accommodation of the traveling public who were to use the station, and may be regarded as incidental to the maintenance and operation thereof by it which the statute expressly directed, and therefore as contemplated by the statutory provisions, establishing the company's organization. Since the railroads have been thereby relieved from having to meet out of their earnings a material part of the charges expressly ranked by the statute among their operating expenses, and their net earnings applicable by them to their own dividends have been to that extent augmented, that the company's organization is in no respect for profit can hardly be reasonably said.

There appears to be no little ground for the conclusion that every organization which does not belong to any one of these classes expressly mentioned in the proviso which section 38 of the excise tax act contains should be regarded as "organized for profit" within the meaning of that section. In Sargent, etc., Co. v. Von Baumbach, 207 Fed. 423, 428, the District Court in Minnesota, expressed itself in favor of such a construction. In its enumeration of the classes of organizations to be exempted from the general liability to taxation under the act, the proviso adds: "No part of the net income of which inures to the benefit of any private stockholder or individual."

These words forbid the application of the proviso wherein they occur to any organization mentioned therein whereto they do not apply, even though

in all other respects the proviso would entitle it to exemption. But I cannot regard them as indicating that no organization is to be treated as one "for profit" in the sense of the statute unless it provides for or permits a net income inuring directly to the benefit of some private stockholder or individual.

I therefore consider the scheme of the plaintiff's organization adapted to permit the acquisition of what may fairly be called "profit," and hold that it was a corporation organized for profit within the meaning of the federal statute. I reach this conclusion without regard to the fact that it pays, as required by the state statute under which it is organized, a franchise tax upon the market value of its capital stock to the state of Massachusetts; and notwithstanding the fact that it has neither paid any dividends on said capital stock nor accumulated any surplus from its operations.

2. The next question is whether the plaintiff corporation was "engaged in business" within the meaning of the act during the years to which this case relates. There being no dispute that during those years it carried on the operations it was organized to carry on, in all respects as directed in or contemplated by the state statute permitting its organization and regulating its operations, its contention upon this point is only that said operations were not "for profit," and that by "engaged in business" the act cannot mean business from which no profit is to result. This contention is in effect disposed of in the defendant's favor by what has been above said.

3. It remains to consider the plaintiff's claim that it has been taxed upon an amount greater than the true amount as its "net income" for the years in question. The facts regarding its income for 1909 are as below, and determination of the correct method of ascertaining its taxable net income for that year will determine the correct method applicable to the figures dealt with in each of the two later years, which figures differ little in either year, for purposes here material, from those of the year 1909.

In 1909 the plaintiff's gross receipts were:

| | |
|---|---:|
| From N. Y., N. H. & H. R. R. Co. (1) | $ 517,848.17 |
| From the N. Y. C. & H. R. R. R. Co. (2) | 172,616.07 |
| From other sources as above (3) | 312,673.11 |
| Total | $1,003,137.35 |

Its expenditures were:

| | |
|---|---:|
| Interest on its bonds (4) | $ 490,000.00 |
| Operating expenses (5) | 345,551.26 |
| Repairs (6) | 143,512.77 |
| General expenses (7) | 15,384.57 |
| Massachusetts franchise tax (8) | 8,688.75 |
| Total | $1,003,137.35 |

The plaintiff's annual return under the act for 1909 shows as "gross income" only the above item 3 of its gross receipts, viz. $312,673.11, which was stated to consist of "amounts actually received for rent of offices and concessions, receipts for parcel room, baggage storage, and lavatories, and proceeds of power, heat, light, Pintsch gas, and ice."

It claimed the same amount as a deduction authorized by the statute for "all the ordinary and necessary expenses of maintenance and operation of the business and properties of the corporation," thus disclosing no taxable net income whatever.

Neither the amounts paid in by the railroads nor the equivalent amount of expenditures balanced thereby were included in the return as made, either as gross income or as deductions therefrom.

But the tax commissioner, acting under the fourth clause of section 38 of the act, amended this return by making it include in "gross income" not only the item of receipts above identified as 3, but items 1 and 2 also; in other words, the entire gross receipts. The "deductions" to be made therefrom, as approv-

ed by him, included the items of expenditure 5–8, inclusive, but of the item (4), interest paid on bonds, only $17,500 was allowed to stand as a deduction. Interest on bonded or other indebtedness paid within the year is to be deducted from gross income, according to the second clause of section 38; but only the interest paid upon such indebtedness to an amount not exceeding the corporation's paid-up capital stock—in this case $500,000—as already stated. The interest paid on this amount was the $17,500 allowed; all the remaining interest paid was disallowed as a deduction. Agreed facts, par. 4.

These amendments made by the commissioner had the result of leaving $472,500 of the plaintiff's gross receipts, in fact used by it in paying interest on its bonds, to stand as net income ascertained according to the second clause of section 38, and of estimating the tax payable by the plaintiff at 1 per cent. upon that amount, less the specific exemption of $5,000, allowed by the first clause of said section, i. e., upon $467.500, although its actual total receipts had been in fact wholly exhausted and balanced by its actual total expenditures, as shown above.

The plaintiff contends that receipts devoted to the payment of interest on its bonds were not income at all within the meaning of the act. But to take this position is to say that no part of what the railroads paid in to it was gross income within the act. The railroads were not required by the state statute to make, nor did they in fact make, so far as appears, separate or specific payments identified as payments to meet the interest semiannually becoming due from the plaintiff to holders of its outstanding bonds. A statement sent each railroad on the first day of each month gave the plaintiff's total expenditure for the preceding month, including as one item thereof one-twelfth of the total annual interest on said bonds. Each such statement gave also the plaintiff's total revenue for the same month from sources other than said railroads. Each railroad's proportion of the expenditure not covered by the revenue shown as above was charged to and paid by it, month by month, the New York Central paying, during the years here in question, 25 per cent. of said balance, and the New York, New Haven & Hartford 75 per cent. thereof. Agreed facts, par. 7.

If allowed to offset its gross income by the entire amount of its expenditure or disbursements, no net income affording a basis for taxation under the act would remain and (assuming the correctness of the conclusions herein above adopted) the plaintiff would have nothing to complain of. It is only the fact that the express provisions of the second clause of section 38 forbid the inclusion of any interest paid on bonds in the deduction allowed for "ordinary and necessary expenses * * * paid * * * out of income in * * * maintenance and operation," and, while allowing a deduction for interest payments, forbid such deduction, when indebtedness exceeds paid-up capital stock, of any interest paid upon such excess, which gives rise to the plaintiff's complaint that a tax has been exacted from it, contrary to the intent of the act. But if the plaintiff was a corporation taxable under the act, the question presented with regard to the deduction for interest paid on its bonds is the same as that considered by the Supreme Court in Anderson v. Forty-Two Broadway Co., 239 U. S. 69, 36 Sup. Ct. 17, 60 L. Ed. 152. In that case the interest on $600 only, being the amount of paid-up capital stock, was allowed to be deducted, and the net income whereon the tax was computed included receipts which had been in fact devoted to payment of the remaining interest on a bonded indebtedness of $4,750,000. In the opinion of the court, Congress deemed that:

The carrying of the indebtedness should be considered as a principal object of the corporate activities, that the operations of such a corporation are conducted more for the benefit of the creditors than of the stockholders and that the contribution of the corporation to the expenses of the government should be admeasured with this fact in view.

In the case above cited it had been held in the District Court and on appeal that, as the plaintiff here contends, the entire interest paid on bonded indebtedness should be treated as part of the cost of maintenance and operation and therefore be allowed as a deduction from gross income. 209 Fed. 991; 213

Fed. 777, 130 C. C. A. 338. The contrary construction of the act adopted by the Supreme Court as above determines this question in the defendant's favor.

The plaintiff has further contended that the facts set forth in paragraph 6 of the agreed statement, relating to the returns of annual net income made by the railroads themselves and the estimate of their own net incomes accepted by the tax commissioner as the basis of the franchise taxes to be paid by them, show that they will be subjected to double taxation in respect of some of the same items if the plaintiff's net income subject to taxation is estimated as above. I am unable to sustain this contention. If the railroads included in their expenditures to be deducted the expenditures of the terminal company, they also included in their gross income so much of the terminal company's gross income as they had not themselves contributed, so that the amount of tax to which they were liable independently of the terminal company was not, in the result, increased.

It follows from the conclusions above stated that the taxes here in issue were rightly assessed by the tax commissioner, and that the plaintiff corporation has paid the defendant no more than the Federal statute required it to pay.

I therefore find for the defendant.

Stuart C. Rand, of Boston, Mass. (John L. Hall and E. S. Kochersperger, both of Boston, Mass., on the brief), for plaintiff in error.

Thomas J. Boynton, U. S. Atty., of Boston, Mass., for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and ALDRICH, District Judge.

PER CURIAM. These three cases involve the same questions. The first relates to the method of ascertaining the amount of income subject to a tax under the act of 1909. The method adopted excluded the amount paid by the terminal company for interest on its bonds exceeding its capital stock. This would seem to be quite in accordance with Anderson v. Broadway Co., 239 U. S. 69, 36 Sup. Ct. 17, 60 L. Ed. 152. That case goes upon the ground that such interest deductions are declared against by the Corporation Tax Law of 1909, known as the Excise Law.

The other questions relate to the declaratory phrases, "organized for profit" and "engaged in business," and, in respect to these, the contention of the terminal company is that the two should be read together in determining the question of the applicability of the statutory phrase, "organized for profit."

Upon the question whether the terminal company was engaged in business, we are satisfied with the reasoning and findings of Judge Dodge, and, indeed, the terminal company makes no contention against such view if the case were to turn upon the single question as to whether it was engaged in business. But it is urged that the kind of business they were engaged in shows that it was not a corporation organized for profit within the meaning of the statute. We are satisfied with the contrary reasoning below in respect to the character of the corporation and the finding that it was organized for profit within the meaning of the statute; and, moreover, the result in this respect has strong support in the decision in Von Baumbach v. Sargent Land

Company, 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460, decided by the Supreme Court since the decision below.

We think it can fairly be said that profit was one of the substantial objects of the organization of the terminal company, and that, apparently, is enough to bring it within the statute.

Judgment of the District Court affirmed, with costs.