# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

HOUSTON BELT & TERMINAL RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. April 10, 1918.)

No. 3135.

1. INTERNAL REVENUE ⊂⊃9—CORPORATION EXCISE TAX—CORPORATIONS SUBJECT TO TAX.

A terminal railway company, organized for the purpose of performing terminal service for four railroad companies which were its stockholders, having been legally organized as a corporation capable of earning and paying dividends, is subject to Corporation Excise Tax Act Aug. 5, 1909, c. 6, 36 Stat. 112, though the companies owning its stock organized the terminal company merely to provide a convenient joint agency for the performance of certain of their duties as carriers without any idea of deriving a profit.

2. INTERNAL REVENUE ⊂⊃9—CORPORATION EXCISE TAX—"INCOME."

Four railroad companies operating in Texas organized a terminal company subscribing and paying for its capital stock in equal parts. In order to finance the organization, it was necessary to borrow a large sum of money, and, the credit of the terminal company not being sufficient to obtain the needed loan, it was arranged that the several railroad companies should pay in equal parts the annual interest and sinking fund requirements of a loan from a trust company to the terminal company which was to be evidenced by bonds secured by a mortgage. Corporation Excise Tax Act Aug. 5, 1909, imposes an excise tax measured by their net incomes on corporations for the privilege of doing business in a corporate capacity. *Held* that, as the title to the property vested in the terminal company subject to the mortgage and the interest payments were for its benefit, such interest payments should be treated as an income for the purpose of ascertaining the amount of the excise tax; it being immaterial whether the railroad companies were primarily liable for the interest payment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

---

In Error to the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Action by the United States against the Houston Belt & Terminal Railway Company. There was a judgment for the United States, and defendant brings error. Affirmed.

---

Andrews, Streetman, Burns & Logue and R. C. Fulbright, all of Houston, Tex., for plaintiff in error.

John E. Green, Jr., U. S. Atty., of Houston, Tex., for the United States.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is a writ of error to a judgment of the District Court of the United States for the Southern District of Texas in favor of the defendant in error, the United States, against the plaintiff in error for the amount of taxes claimed to have been due and unpaid under the corporation tax law of August 5, 1909 (36 Statutes at Large, 11), for the years 1909, 1910, and 1911. The case was tried by stipulation before the District Judge without a jury, and the error relied on is that the evidence does not support the judgment rendered by him. The evidence was partly stipulated and partly oral, but there was not any dispute of fact on the trial below, and but a single question of law is presented for decision.

[1, 2] The plaintiff in error was organized under the laws of the state of Texas providing for the organization of terminal railway companies. It was organized for the purpose of performing terminal services for four railroad companies, which were its stockholders, and which are referred to as "tenant lines." In order to finance its organization, it was necessary to borrow a large sum of money, and the credit of the terminal company was not sufficient to accomplish the needed loan. An arrangement was reached by which the tenant lines agreed with the Central Trust Company of New York, and with the terminal company, that they would pay in equal parts the annual interest and sinking fund requirements of a loan from the Central Trust Company to the terminal company, to be evidenced by bonds in the amount of $5,000,000, secured by a mortgage on the property of the terminal company. The capital stock of the terminal company was subscribed for and paid for by the four tenant lines in equal parts, and was in the amount of $25,000. The current operating expenses of the terminal company were to be paid by the tenant lines ratably according to the extent of the user by them respectively, to be determined according to a wheelage basis. The stock of the tenant lines was agreed to be and in fact was pledged to the Central Trust Company, to secure the loan, with the privilege of sale, in case of default on the part of any tenant company in its payments of interest and for the sinking fund. In case of such default, provision was made for the elimination of the defaulting tenant line from the privilege of being served by the terminal company and from the use of its property. It was also provided that any of the tenant companies could withdraw, under certain conditions, from the agreement, and it was thereby and thereafter relieved from further obligation for interest and sinking fund payments. The tenant lines became liable to pay the principal of the loan, only through their agreement to pay the sinking fund installments, while they continued tenant lines.

The terminal company executed the bonds and mortgage which

secured them and was directly liable to the Central Trust Company for the loan. However, the installments of interest and sinking fund were not paid by the tenant lines to the terminal company and by it, in turn, paid to the Central Trust Company, but were paid in quarterly parts by the respective tenant lines to the Central Trust Company. The title to the terminal properties and the ownership of them was in the terminal company, subject to the mortgage. All earnings of the terminal company, received from others than the four tenant companies, were used in reduction of operating expenses, and so distributed upon the same basis that operating expenses were paid, as between the tenant companies. Advances to cover operating expenses were made pro rata by the tenant companies from time to time. The relations of the tenant companies, the terminal company, and the Central Trust Company were fixed by three agreements, executed contemporaneously, and the course of business during the years in question, 1909, 1910, and 1911, was, as stated, in pursuance of the three agreements. The terminal company paid a corporation tax during each year, but, in estimating it, did not take into account interest payments made by the four tenant companies to the Central Trust Company in pursuance of their contractual obligation during each of the three years. The act of August 5, 1909, permits a deduction of interest paid by the corporation, but not in excess of interest on the amount of its capital stock. The government claims that the amounts paid by the tenant companies to the Central Trust Company were income received by the terminal company, and that, though it all went to pay interest, only an amount equal to the interest on the amount of its capital stock was deductible under the terms of the corporation tax law. The amount sued for represents the taxes due on the amounts paid by the four tenant companies, on account of interest, to the Central Trust Company during the three tax years, less the interest on the amount of the capital stock of the terminal company. Payments on account of sinking fund requirements during the same years are conceded by the government not to have constituted income.

The contention of the plaintiff in error is that the tenant companies were principal debtors of the Central Trust Company and not mere guarantors of the terminal company, and that the payments, never having been received into the treasury of the terminal company, constituted no part of its income for the years in question, and were properly left out of account by the terminal company in returning its corporation tax. This is the issue between the parties. Its solution depends upon whether the payments made by the tenant companies to the Central Trust Company were properly income of the terminal company under the corporation tax law. That law was held by the Supreme Court in the case of Anderson v. Forty-Two Broadway Co., 239 U. S. 69, 36 Sup. Ct. 17, 60 L. Ed. 152, to be "not in any proper sense an income tax law, nor intended as such, but was an excise upon the conduct of business in a corporate capacity, the tax being measured by reference to the income in a manner prescribed by the act itself." Section 38 of the Act of 1909, c. 6, 36 Statutes at Large, 112, provides that the taxable net income shall be ascertained by deducting from the gross

amount of income among other things, "interest actually paid within the year on its bonded or other indebtedness, * * * not exceeding the paid up capital stock of such corporation, * * * outstanding at the close of the year." It is clear that net income is made by the law the mere measure of the excise tax and that the law defines what net income for this purpose shall consist of. The fact, if it were a fact, that the imposition of the tax in the statutory method might result, in certain cases, in double taxation, or in other inequity, or that the net income defined by the statute might differ from an accountant's definition of net income, is not important in applying the statute. The law imposed an excise tax, imposed upon the doing of business in a corporate capacity, and measured in amount by its net income as therein defined.

It may be that the tenant companies organized the terminal company to provide a convenient joint agency for the performance of certain of their duties as carriers, and with no view to profit to be derived from its organization. It was, however, legally organized as a corporation, capable of earning and paying dividends to its stockholders, and the fact that it has not done so does not make it the less a corporation engaged in business and organized for profit, within the meaning of the corporation tax law. Profit from its organization and operation could result to its stockholders in other ways than in dividends. If the tenant companies chose to avail themselves of an agency, owned by them, which did business in a corporate capacity, then under the act of August 5, 1909, they became liable through it for the payment of an excise tax for this privilege. The voluntary payment of part of the tax concedes this. Boston Terminal Co. v. Gill, Collector, 246 Fed. 664, —— C. C. A. ——.

The tenant companies made use of the facilities and services of the terminal company in two ways: First, by the use of its property; and, second, through the services of its employés. Compensation for the services of its employés was returned by the payment by the tenant companies of a pro rata part of its actual operating expenses. The only other return from the tenant companies to the terminal company provided for was the payment of interest and sinking fund installments. Unless these represented compensation for the use of the terminal company's property, there was none. The property so used was owned by the terminal company, not by the tenant companies, and compensation for its use was properly due to the terminal company as owner. Upon withdrawal from such use by a tenant company, its obligation to continue interest and sinking fund payments ceased. This is persuasive that the consideration for such payments was the user of the property of the terminal company. When the sinking fund installments fully paid the mortgage indebtedness, the property became the unincumbered property of the terminal company. The payments of interest by the tenant companies were not voluntary, even as to the terminal company. The tenant companies covenanted with the terminal company to make such payments, and, in case of default, a provision was made in the agreements for the exclusion of any that defaulted from the privileges they enjoyed in the terminal company's facili-

ties. It seems clear that payments of interest made under such an arrangement were made in lieu of compensation for the enjoyment of the property used and were in the nature of rent received by the terminal company and to be accounted for as part of its income, as rent would be. The fact that the payments were to be made directly to the Central Trust Company by the tenant companies is not important, if there existed an obligation on the part of the tenant companies to the terminal company to make them for its benefit, and if the consideration of such obligation was the privilege accorded the tenant companies to use the property of the terminal company.

The effect of the arrangement was the same as if the tenant companies had expressly agreed to pay rental for the use of the premises in the amount of the interest and sinking fund payments, and, to avoid circuity, the payments by mutual consent were made direct to the mortgagee. If the owner of a building, as a condition of securing a loan on it, should consent that the mortgagee might collect the rents and apply them in reduction of the mortgage debt, the owner would still be required to report them as income, though they were never, in fact, paid to him. He would benefit from their payments, as much as if they had been paid to him direct. The case is similar to that of Blalock v. Georgia Ry. & Electric Co., 246 Fed. 387, —— C. C. A. ——, recently decided by this court, and is not distinguishable from it in principle in this respect. Nor is it important to determine whether the tenant companies were guarantors of the loan of the terminal company or principal debtors with it, in their relations to the Central Trust Company. As between the terminal company and the tenant companies, there was an independent enforceable covenant on the part of the tenant companies in favor of the terminal company to pay the installments of interest and sinking fund, for the terminal company, as they fell due—a covenant, upon a continued performance of which the right of the tenant companies to use the property of the terminal company depended. There was also a primary and direct obligation on the part of the terminal company to pay the interest and sinking fund installments to the Central Trust Company, which obligation the tenant companies, as a consideration for their enjoyment of the terminal company's property, agreed to perform. We think it clear that the payment of such sums, in pursuance of their covenant, was but a payment of rent by the tenant companies to the terminal company for the use of the premises occupied by them, and was properly treated as if it had been paid to the terminal company, and by it paid to the Central Trust Company.

The judgment of the District Court is affirmed.