*1005 OPINION.
James:
The taxpayer alleges error on the part of the Commissioner, first, on the ground that the amounts above set forth were *1006 contributed by the railroad companies as capital to the taxpayer and did not constitute income; and, second, that the taxpayer is a mere joint facility and agency of the railroad companies, and as such is not a separate entity which can be the receiver of income or taxable under the revenue laws. On the latter point we do not agree with the contention of the taxpayer, and must hold that it is a separate taxable entity, distinct from the railroad companies, capable of receiving income upon its own account, and subject to taxes thereon. Hamilton v. Kentucky & Indiana Terminal R. R. Co., 289 Fed. 20; Boston Terminal Co. v. Gill, 246 Fed. 664; Houston Belt & Terminal Ry. Co. v. United States, 250 Fed. 1. The principal consideration is whether the taxpayer was in receipt of income or capital contributions from the railroad companies to the extent that either its funds received in the first instance as tolls or its funds received as supplemental contributions were used for the purpose of retiring its funded debt. On this point we believe the position of the taxpayer is correct.
In effect, the railroad companies agreed among themselves, as set forth in the above findings of fact, to construct the bridge over the Ohio River and to create for that purpose the taxpayer corporation, and to share the cost of that facility in the manner laid down in the agreements. Briefly, charges were to be made for the services rendered in amounts deemed sufficient to pay all of the expenses of the taxpayer and in addition to retire its indebtedness at maturity. In the first instance, bills were rendered monthly upon a traffic basis, but if the amounts collected under these bills were insufficient to meet the charges of the taxpayer, supplemental bills were rendered for each of the several months, making up the deficits and calling for contributions by the railroad companies in the proportions of their original payments to the taxpayer. To the extent that the taxpayer’s funds derived either under the original or the secondary bills were devoted to the retirement of bonds, the railroad companies were to receive preferred stock in the exact amount of their contributions used for that purpose. This was in accordance with the contract entered into July 1, 1915, by the two original participating railroad companies, and after September 1, 1920, participated in by the Illinois Central. .
From the beginning, the funds so contributed by the railroad companies were earmarked partly for the ordinary expenses of the taxpayer and partly for its capital requirements. In so far as the contributions were used or to be used for ordinary expenses, interest, taxes, and dividends, there can be no question that the railroad companies were making payments for services rendered by the taxpayer, which constituted expenses to themselves and income to the *1007 taxpayer. To the extent, however, that their contributions were from the beginning required and, under the contract of July 1, 1915, were contemplated to be used for the retirement of debt and offset by preferred stock issued or to be issued to the railroad companies, the contributions were not expenses of the railroad companies, and were not income to the taxpayer. They were, on the one hand, investments of capital, and, on the other, receipts of capital for which stock was required to be issued. A liability on account of bonds or for sinking fund payments was translated into a liability on account of preferred stock. So far as this taxpayer was concerned, there was no substantial change on its balance sheet, and this becomes instantly clear when it is realized that at no time did it have, under the procedure set forth in the contracts, any income which could be converted to surplus or utilized for the payment of dividends, except in so far as such contributions were required to pay dividends on preferred stock isstied in conformity with the contract. Any surplus allocable to such a use would be, of course, income to the taxpayer, but no such surplus was actually created during the taxable years in question, so far as is indicated by any evidence now before the Board.
We are not unmindful of the decisions cited by the Commissioner—namely, Houston Belt & Terminal Ry. Co. v. United States, 250 Fed. 1; Northern R. R. Co. v. Lowe, 250 Fed. 856; Boston Terminal Co. v. Gill, 246 Fed. 664; Blalock v. Georgia Ry. & Electric Co., 246 Fed. 387; Anderson v. Morris & Essex R. R. Co., 216 Fed. 83; and Rensselaer & Saratoga R. R. Co. v. Irwin, 249 Fed. 726. None of these decisions, however, are pertinent to the question here at issue. They deal solely with the proposition to which reference was made briefly at the beginning of this opinion. Nor do we overlook the argument made by the Commissioner that the payments on account of preferred stock were in effect stock dividends. Had the contract provided for the distribution of preferred stock not upon the basis of the payments made for the use of the taxpayer’s facilities, but upon the basis of common stock holdings, there would be much force in the Commissioner’s suggestion. As set forth above, however, in the findings of fact, this was not the case, and the funds contributed by the railroad companies were offset by preferred stock issued or required to be issued in the exact amounts contributed by each of the several railroad companies. Under these circumstances, the funds never reached the stage of surplus subject to distribution then or at a future date in the form of dividends — either cash or stock. From the beginning the funds so paid represented contributions by the railroad companies, for which they had an absolute right to the issuance to them of pre *1008 ferred stock. We are also aware, as noted by the Commissioner in his brief, that no competent evidence was offered that preferred stock ever was actually issued to the railroad companies, and we have made no finding of fact with reference thereto. As we view the case, whether stock was actually issued at the time is immaterial. The railroad companies from the moment of their respective payments were entitled under their contracts to an accounting as to the disposition made of the funds so paid and to preferred stock in respect of their capital contributions. The stock was issuable on demand if not actually issued. Under these circumstances, the deficiency determined by the Commissioner must be disallowed.