## APPEAL OF FRED W. WARNER.

Docket No. 3713. Promulgated December 30, 1926.

1. Taxpayer *held* to be a stockholder in a corporation which, for services rendered, issued stock in his name, but placed it in the hands of a "bonus custodian" to insure carrying out a contract that taxpayer would not sell, transfer, or assign his stock.

2. Cash dividends declared on stock owned by the taxpayer and standing in his name on the corporation's books at the time of declaration were income to him before being diverted to his wife through an assignment which purported to transfer the right to receive dividends.

*C. J. McGuire, Esq., W. C. Magathan, Esq.,* and *Russel I. Rose, C. P. A.,* for the petitioner.
*John D. Foley, Esq.,* for the Commissioner.

This is an appeal from the determination of deficiencies in income tax for the years and in the amounts as follows:

| Year. | Deficiency. |
|---|---|
| 1920 | $30, 634. 62 |
| 1921 | 7, 072. 57 |
| 1922 | 1, 313. 98 |
| Total | 39, 021. 17 |

The questions for determination are: (1) Whether certain payments made to the taxpayer were dividends or additional compensation; and (2) whether, under an assignment and two trust indentures executed by the taxpayer, the income received by the assignee and the beneficiaries was taxable as income to them or to the taxpayer.

### FINDINGS OF FACT.

The taxpayer is an individual residing at Pontiac, Mich. From 1914 to June 30, 1921, he was president of the Oakland Motor Car Co., a subsidiary and a division of the General Motors Corporation.

In 1918 he was vice president and a director of the General Motors Corporation.

On August 15, 1917, the president of the General Motors Corporation addressed a letter to the taxpayer confirming an agreement they had made, whereby the taxpayer was to receive, as compensation for his services for the year August 1, 1917, to July 31, 1918, as manager of the Oakland Company, 5 per cent of the profits of the company. Under this agreement the taxpayer agreed to accept 60 per cent of his compensation in common stock of the General Motors Corporation " in lieu of cash in the discretion of the Finance Committee of the Corporation." The agreement was fully performed and the taxpayer received his compensation for that year partly in cash and partly in General Motors stock.

By letter of August 1, 1918, the president of the General Motors Corporation outlined an agreement entered into with the taxpayer, whereby the latter was to receive as compensation for the period August 1, 1918, to December 31, 1919, the sum of $150,000 per annum and a percentage of the profits of the Oakland Company, if the profits exceeded a specified amount. Under this agreement the taxpayer was permitted to elect what portion of his compensation, which remained unpaid when the amount was finally determined, should be paid in cash and what portion should be paid in General Motors stock, except that at least one-third should be liquidated by a bonus allotment of stock in accordance with a plan hereinafter described. The letter of August 1, 1918, concludes as follows:

As the aim and intent of this form of compensation agreement is to effect a large and continuing investment in General Motors stock by the General Managers, the forfeiture clause as embodied in paragraph 7 of the Bonus Plan, whereby a forfeiture would occur in case you are removed by the corporation, will be waived.

In other words, if the corporation severs your connection with the business, the forfeiture provision in your particular case will not be enforced. If, however, you should leave the service of the corporation of your own volition the provisions of the Bonus Plan will apply as in other cases.

This agreement was fully carried out, part payment being made in cash and part in stock.

Pursuant to the 1917 and 1918 agreements, the General Motors Corporation executed, in the name of the taxpayer, certificates of its capital stock equal in value to the compensation which he had not drawn, as follows:

| Date of issue. | Number of shares. |
| --- | --- |
| February 28, 1919 | 1, 250 |
| June 12, 1920 | 10,·218 |

The certificates of stock so executed were not to be delivered to the taxpayer until he had severed his connection with the company.

He received, however, a certificate from the bonus custodian that the stock had been allotted to him. The certificate for 1,250 shares of a par value of $100 was later exchanged for a certificate for 12,500 shares of no par value.

The bonus plan above referred to was a system adopted by the General Motors Corporation for giving its employees additional compensation by the allotment to them of capital stock. The bonus plan for 1918 and subsequent years is described in a pamphlet issued by the corporation; the parts thereof, which are material to the case here, are as follows:

1. BONUS FUND. The corporation will establish a bonus fund to which shall be credited yearly an amount equal to 10% of the net earnings of the corporation after deducting 6% on the capital employed in the business of the corporation; it being intended that this fund shall be invested in stock of the corporation.

\* \* \* \* \* \* \*

5. When bonuses are awarded, a stock certificate for the number of shares allotted to each beneficiary shall be issued in his name and delivered to the Bonus Custodian, who shall hold the same for the beneficiary for a period of five years from the first day of the preceding January until finally delivered or settled for as hereinafter provided. The Bonus Custodian shall notify each beneficiary, through the Head of his Division, of the award granted, and shall procure from him irrevocable powers of attorney to be used to re-transfer the stock as herein provided in case the beneficiary leaves the service of the corporation or is dismissed.

6. The Bonus Custodian shall open an account with each beneficiary, charging him with the par value of the stock awarded and crediting him as of the last day of each month, beginning with January of the year in which the award is made, with 1/60 of its par value. When the credits so made against each award equal the debits, the Bonus Custodian shall deliver to the beneficiary the said stock so awarded, free from all restrictions.

7. If a beneficiary leaves the service of the corporation of his own volition, or is dismissed because of unsatisfactory service, of which the Executive Committee shall be the sole judge, that portion of his bonus represented at the time by the debit balance of his account shall revert to the corporation, and a certificate for the portion of his bonus represented by the total credits in his account shall be delivered to the beneficiary free from all restrictions, provided, however, that no fractional share shall be issued. The corporation shall purchase at par any fractional share to which the beneficiary is so entitled.

\* \* \* \* \* \* \*

9. Upon the death of a beneficiary the Bonus Custodian shall deliver the certificate or certificates evidencing the total bonuses awarded the beneficiary to his executor or administrator, free from all restrictions.

10. Subject to the rights of the Bonus Custodian to retain possession of the stock certificate for the period of five years from the first day of January in the year in which the award is made, or to transfer the stock as herein provided, an award shall vest the beneficiary with all the rights of a stockholder in the stock awarded, including the right to vote and to receive dividends thereon, but excepting, however, the right to sell, assign, or pledge his interest in the stock.

The stock issued in the taxpayer's name was held by the bonus custodian, as provided for in the plan above described.

On July 2, 1920, the taxpayer entered into the following agreement with his wife, Bertha S. Warner:

AGREEMENT, made this 2nd day of July, 1920, between FRED W. WARNER, of the City of Pontiac, State of Michigan, party of the first part, and BERTHA S. WARNER, wife of the said first party, party of the second part.

## WITNESSETH:

WHEREAS there have been allotted to the first party by General Motors Corporation, a corporation of Delaware, Twelve thousand five hundred (12,500) shares of the common capital stock of said General Motors Corporation, without nominal or par value, for the year 1918, pursuant to the Bonus Plan of said corporation, which said shares are deliverable to the first party on the 31st day of December, 1923, or sooner, as in said Bonus Plan provided; and

WHEREAS the first party desires to assign to the second party the dividends, rights and income payable thereon, or in respect thereto while said stock is held by General Motors Corporation.

Now THEREFORE, in consideration of the premises, the sum of Ten ($10) dollars to him in hand paid, receipt whereof is hereby acknowledged, and other valuable considerations, the first party hereby assigns, transfers, sets over and delivers unto the second party, all his right, title and interest in and to any and all dividends, rights or income payable or accruing on or in respect to the said Twelve thousand five hundred (12,500) shares of the common stock of General Motors Corporation without nominal or par value, held by said General Motors Corporation for the first party, pursuant to said Bonus Plan, represented by certificate numbered C15063_____and hereby authorizes and empowers the said General Motors Corporation to pay and deliver any and all dividends, profits or rights payable thereon or in respect thereto, to the said BERTHA S. WARNER.

IN WITNESS WHEREOF, the said first party has hereunto set his hand and affixed his seal the year and day first above mentioned.

(Signed)        FRED W. WARNER.

On the same date, July 2, 1920, he executed two instruments, one of which is as follows:

KNOW ALL MEN BY THESE PRESENTS, that I, FRED W. WARNER, of the City of Pontiac, State of Michigan, herein referred to as "Trustee," being the owner of six thousand two hundred eighteen (6,218) shares of the common capital stock of General Motors Corporation without par value, as evidenced by certificates numbered ————— —————, respectively, have dedicated and set apart, and do hereby dedicate, set apart and declare that from and after as of the date hereof the said shares of stock in whosesoever possession the same may be for my account were transferred and delivered, and I hereby transfer and deliver to myself, said Fred W. Warner, as Trustee, for the use and benefit of my son, Fred W. Warner, Jr., of the City of Pontiac, State of Michigan, hereinafter referred to as "Beneficiary," for the following purposes and upon the following terms and conditions:

To receive and collect the income, profits, interest and dividends therefrom, and after first deducting all taxes, commissions and other charges against

the same, to pay said income to the said beneficiary during the period of his natural life up to December 31, 1924.

On December 31st, 1924, or upon the death of the said beneficiary the trust hereby created shall cease and determine and the principal of the said trust fund shall be paid over to the said Fred W. Warner, the party of the first part, absolutely, and free from any claim hereunder.

In the event of the death of the trustee prior to the death of the beneficiary, the rights, duties and obligations of said trustee shall devolve upon the wife of said trustee, or upon such other person as the trustee herein named shall designate by his last will and testament, failing which designation said trust shall vest in the Guaranty Trust Company of New York, and on failure of either of these to act a substituted trustee shall be designated by the executor or personal representative of the trustee first above named herein.

This indenture is upon the further provision and condition that the trustee first above named is authorized and empowered to continue to retain the investments of principal of this trust in the securities hereinbefore specifically described, and said trustee shall not be responsible for any loss or shrinkage in the value of said securities forming the principal of said trust by so doing; and further that the trustee is authorized to sell the same or any part thereof and to invest and re-invest the proceeds of the sale thereof in bonds or stocks of corporations, in bonds or notes secured by mortgages on real estate, or in any other manner; the trustee being in no wise restricted as to such investments except to the obligation of good faith in making such reinvestment and except also that on the death of the trustee first above named there shall be no change from the securities in which the said trust fund is then invested unless such reinvestment shall be made in such securities as may be then authorized by the laws of the State of New York for the investment of trust funds.

In the event that any stock dividends shall be declared upon any stock held under this indenture, the stock received pursuant thereto shall for all purposes be treated and deemed to be principal, even if the said stock dividends shall represent earnings.

This trust is with the express provision that no part of the principal of said trust estate or the income therefrom shall be liable for any debts or obligations of the said beneficiary, and the said beneficiary shall have no power to anticipate or assign the whole or any portion of the income from said trust estate, but the same shall be paid to said beneficiary free of all claims of any kind or nature whatsoever.

In witness whereof the said trustee has hereunto subscribed his hand and affixed his seal the 2nd day of July, 1920.

(Signed)        FRED W. WARNER.

The other instrument is the same as the above, except that the number of shares involved is 4,000 and the beneficiary is Daniel S. Warner, another son of taxpayer.

Cash dividends on the stock here involved, in the amount of $15,000, were paid to the taxpayer in 1919, and $9,429.50 during the period January 1, 1920, to July 2, 1920. These payments were reported by the taxpayer in his income-tax returns for the years in which received, as dividends subject only to surtax. During the period July 2, 1920, to December 31, 1920, and in the years 1921 and 1922, the taxpayer's assignee and beneficiaries under the instruments

above described received cash dividends amounting to $42,881.50, which they reported in their income-tax returns as dividends. During the year 1920 the assignee and beneficiaries also received, on account of stock issued in the name of the taxpayer, stock dividends of 1,703-36/40 shares, which were not reported in their income-tax returns.

The cash dividends were paid by checks bearing the notation, "dividend on common stock quarter ending [appropriate date]." The stock dividends were paid as such by the General Motors Corporation, not to the bonus custodian, but to the persons named by the taxpayer as assignee and beneficiaries in the above-mentioned instruments. In authorizing dividends on the stock, the board of directors of the General Motors Corporation made no distinction between the so-called bonus stock and the remainder of the outstanding capital stock.

The taxpayer reported his income on the basis of cash receipts and disbursements.

OPINION.

TRAMMELL: The first question for determination is whether the taxpayer was a stockholder of the General Motors Corporation with respect to the stock which had been issued in his name and was held by the bonus custodian. Upon the solution of this issue depends that of whether distributions made by the corporation on the basis of stock held by the bonus custodian were dividends in the hands of the taxpayer or whether they constituted additional compensation.

The stock was issued in the name of the taxpayer as a part of his compensation in accordance with agreements between the issuing corporation and the taxpayer, the latter having performed the services required. The corporation laws of the State of Delaware under which the General Motors Corporation is organized provide that capital stock may be purchased "by labor done." (Section 14, General Corporation Laws.) In this case the taxpayer had fully performed the services for which the stock was to be issued, but, under the bonus plan of the corporation and the agreement under which he performed the services, he waived his right to physical possession of the stock certificates. Article 10 of the bonus plan specifically gives the persons to whom an award of stock has been made all the rights of stockholders except the right to sell, assign, or pledge their interest in the stock. The waiving by the taxpayer of his right to possession of the stock certificates did not make him any the less the owner of the stock under the definitions of that term. An owner is "one who has dominion over a thing, which he may use as he pleases, except as restricted by law or by agreement; * * * one who has the legal or rightful title whether he is the possessor or

not; * * * the person in whom property is for the time being beneficially vested, and who has the occupation or control or usufruct of it." 29 Cyc. 1549.

It is well established that a person need not have in his possession stock certificates to be a stockholder, the certificates being merely evidence of stock ownership. In *Pacific National Bank* v. *Eaton*, 141 U. S. 227, the United States Supreme Court said:

Millions of dollars of capital stock are held without any certificate; or, if certificates are made out, without their ever being delivered. A certificate is authentic evidence of title to stock; but it is not the stock itself, nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself.

See also *Beardsley* v. *Beardsley*, 138 U. S. 262.

The certificates in question were made out and appeared in the name of the taxpayer, except that the corporation gave effect to the assignments and trust agreements in paying dividends on the stock.

In *Turnbull* v. *Payson*, 95 U. S. 418, it was held that the name of a person appearing on the stock book as a stockholder, or a receipt given for a dividend upon the shares standing upon the books in his name, creates a *prima facie* presumption of his being a stockholder. See also *Franklin Bank* v. *Commercial Bank*, 36 Oh. St. 350; *State* v. *Ferris*, 42 Conn. 560; *Swobe* v. *Brictson Mfg. Co.*, 279 Fed. 560.

While the taxpayer might have forfeited a part of the stock by severing his connection with the company before a specified date, the fact remains that, while he was in the employ of the company, his relation to it was that of a stockholder. Furthermore, the evidence shows that the cash dividends were paid periodically as dividends by the company in accordance with the usual declaration resolutions, and that in authorizing dividends on its stock the board of directors of the company made no distinction between the so-called bonus stock and the remainder of its outstanding capital stock.

From what has been said above it clearly follows, in our opinion, that the amount of $67,311 paid to the taxpayer or his nominees constituted dividend payments and not additional compensation. Consequently, that amount is subject only to the surtax.

It was stipulated by the parties to this appeal that the so-called stock dividends "were paid as such" by the company. Holding, as we do above, that the taxpayer was actually a stockholder of the company in so far as the stock here involved is concerned, it is clear that the 1,703–36/40 shares of stock issued by the company in 1920 were true stock dividends, and accordingly are not subject to tax under the decision in *Eisner* v. *Macomber*, 252 U. S. 189.

The dividends which were paid to the taxpayer's wife were paid to her by virtue of a contract dated July 2, 1920. This contract provided that the taxpayer " assigns, transfers, sets over and delivers unto the second party [Bertha S. Warner] all his right, title and interest in and to any and all dividends, rights or income payable or accruing on or in respect to the said Twelve thousand five hundred (12,500) shares of the common stock of General Motors Corporation without nominal or par value, held by said General Motors Corporation for the first party." This right was assigned to the taxpayer's wife only for the period during which the stock was held by the General Motors Corporation for the taxpayer. The instrument does not purport to convey or transfer the stock itself.

Ordinary dividends are the distributions of earnings of a corporation to its stockholders. A corporation is not authorized to distribute earnings as dividends to those not stockholders, except under the authority and at the request of those entitled to receive them as stockholders. When dividends are declared the corporation then becomes indebted to its stockholders for the amount. *United States* v. *Guinzburg*, 278 Fed. 363, and *Plant* v. *Walsh*, 280 Fed. 722. If the stockholder assigns his right to receive the dividend, the corporation by paying the dividend to the assignee satisfies an obligation to the stockholder. The right to receive it from the corporation accrues by virtue of the stock ownership. It is a stockholder's right, although they are paid to others whose rights are derived from the stockholder's right to receive them. The situation is analogous to a case where A owes B a debt and authorizes C to pay money owing to him to satisfy the debt. In so far as A is concerned, he receives income when his debt to B is paid.

In the case of *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, 249 Fed. 726 (certiorari denied by the United States Supreme Court, 246 U. S. 671), the Circuit Court of Appeals had before it what seems to us a similar situation. There a corporation leased its railroad and agreed that the rental should be paid to its stockholders and bondholders, except that an amount not in excess of $1,000 per year should be paid to the corporation. It was contended that the corporation did not receive the rents and did not have the right to receive them, and therefore the amounts should not be included in its taxable income. This contention was denied by the court, which used the following language:

It is true that the rent of its road does not go into the plaintiff's treasury and that it has no means of withholding the tax from it. It is also true that the rent reserved by the lease is paid by the lessee in fixed sums to third parties. All the same, the rent is the property of the plaintiff, and remains such, though by the terms of the lease paid out to others, whose rights are derived through it. While the rent is a debt of the lessee to the lessor, it is,

as between the lessor and its stockholders, the lessor's income, out of which the dividends, if any, are to be paid.

The application of the rent under the lease is a mere labor-saving device, the effect being exactly the same as if it be paid to the lessor and by it paid out as far as necessary to bondholders for interest, and the surplus in dividends to its stockholders. The description of the fixed sum to be paid by the lessee of 8 per cent. to the lessor's stockholders as a dividend shows that the payment is made as agent of the lessor."

To the same effect, see also *Blalock* v. *Georgia Ry. & Electric Co.,* 246 Fed. 387; *Anderson* v. *Morris & Essex R. R. Co.,* 216 Fed. 83; *West End Street Ry. Co.* v. *Malley,* 246 Fed. 625; *Houston Belt & Terminal Ry. Co.* v. *United States,* 250 Fed. 1; *Boston Terminal Co.* v. *Gill,* 246 Fed. 664; *Hamilton* v. *Kentucky & Indiana Terminal R. R. Co.,* 289 Fed. 20.

In view of the foregoing, we are of the opinion that the dividend from the stock, the dividends or right to dividends on which were assigned to the taxpayer's wife, was income to the taxpayer before it could be diverted to another, and, as such, the amount of cash dividends received by the taxpayer's wife is subject to tax as the taxpayer's income. *Appeals of Ormsby McKnight Mitchel,* 1 B. T. A. 143; *American Telegraph & Cable Co.,* 2 B. T. A. 991.

With respect to the 10,218 shares of which the petitioner created trusts for his two sons, a different situation exists. A valid trust having been created with respect to those shares, it is clear that the dividends are not taxable to the petitioner in his individual capacity.

*Judgment will be entered after 15 days' notice, under Rule 50.*