874 PARK AVENUE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30832.   Promulgated May 26, 1931.

*Harold L. Herrick, Esq.,* for the petitioner.
*Bruce A. Low, Esq.,* for the respondent.

402

**OPINION.**

MATTHEWS: The only issue is whether the assessments paid to the petitioner by stockholder-tenants pursuant to the terms of their leases to be used by the petitioner for the amortization of the mortgages on the apartment house and so used constitute paid-in surplus capital to the petitioner or income in the nature of rent. We are of the opinion that the assessments so made and employed were contributions of capital to the petitioner and as such nontaxable.

In relation to a state of facts in all essential respects identical with .those here presented, the Commissioner of Internal Revenue in I. T. 1469, C. B. I–2, p. 191, stated the facts and his conclusion as follows:

Each of the stockholders of a corporation owning certain apartment buildings is a proprietary lessee holding a lease for 99 years at $1 per year on an apartment or apartments of the value of the shares owned. Under the terms of the lease, each stockholder, in addition to the nominal rent of $1 per year, agrees to pay, when required by the board of directors, his proportionate share, based upon the number of shares of stock held by him, (1) of any deficiency arising from the operation and maintenance of the apartment buildings; (2) such sums as shall be necessary to enable the corporation to pay interest and to amortize mortgages; and (3) any and all necessary expenses incident to the ownership, maintenance, and operation of the property. The lease provides that so much of the payments received from the lessees as may be devoted to the payment of the principal of a mortgage or any other capital expenditures shall be credited upon the lessor's books to "paid-in surplus" account. The lessor's books clearly reflect the application of the payments to the reduction of mortgage indebtedness and other capital expenditures, and the stockholders are advised of the amounts so applied.

Considering the specific provision of the proprietary lease for crediting payments made by the stockholders for the reduction of the mortgage indebtedness or for other capital expenditures to the "paid-in surplus" account in connection with the fact that the books of the corporation reflect the amount of the assessment payments used for such purposes and that the stockholders are advised of the respective amounts so applied, it is held that that portion of the assessment payments credited to the "paid-in surplus" account and devoted to the reduction of the corporation's mortgage indebtedness or for other capital purposes is in the nature of a voluntary assessment upon the stock held by the individual proprietary lessees, which, under article 544, Regulations 62, represents additional cost of such stock, and does not constitute income to the corporation. (I. T. 1302 (C. B. I–1, p. 193) overruled in part.)

We are unable to find that this ruling has been reversed or modified.

This Board has taken the same view. In a case analogous in principle, *Paducah & Illinois Railroad Co.*, 2 B. T. A. 1001, two railroads had organized a bridge corporation, of which they owned all the capital stock, to provide bridge facilities across the Ohio River. The bridge company .and the railroads entered into an agreement by which the latter were to make payments of the former's expenses, etc., and also to make contributions toward its sinking funds and retirement of its bonds in the proportion of their respective use of the bridge company's facilities. In return for the latter class of payments the bridge company was to issue preferred stock. The Board said:

From the beginning, the funds so contributed by the railroad companies were earmarked partly for the ordinary expenses of the taxpayer and partly for its capital requirements. In so far as the contributions were used or to be used for ordinary expenses, interest, taxes, and dividends, there can be no question

that the railroad companies were making payments for services rendered by the taxpayer, which constituted expenses to themselves and income to the taxpayer. To the extent, however, that their contributions were from the beginning required and, under the contract of July 1, 1915, were contemplated to be used for the retirement of debt and offset by preferred stock issued or to be issued to the railroad companies, the contributions were not expenses of the railroad companies, and were not income to the taxpayer. They were, on the one hand, investments of capital, and, on the other, receipts of capital for which stock was required to be issued. * * *

* * * As we view the case, whether stock was actually issued at the time is immaterial. * * *

In the third paragraph of Article I, containing the covenants of the lessor, reference is made to " the rent, assessments, and additional rent herein provided for." In the first paragraph of Article II, containing the covenants of the lessee, the lessee agrees that the assessments made by the board of directors " shall be, and be deemed to be an assssment of rent imposed by the Lessor," but that " so much of such assessments collected by the Lessor as shall be devoted to the payment of the principal of a mortgage or mortgages or to other capital expenditure, shall be credited by the Lessor upon its books to the account of ' paid-in surplus.' "

Because the assessments are referred to in Article II, paragraph 1, of the lease as assessments of rent, the respondent contends that they were in fact payments of rent, but this contention is completely refuted, it seems to us, when the lease is read as a whole and the purposes of the individual corporators of petitioner in creating the corporation are taken into account. We see no essential difference between the amortization assessments here imposed and those imposed and collected by an ordinary corporation from its stockholders.

The respondent also interposes the objection that the petitioner did not credit on its books to a " paid-in surplus " account the amount of such assessments used for the amortization of mortgages. The assessments were separately entered in petitioner's ledger under the heading " assessments," and were allowed to swell the amount of its capital stock account. On these facts we think that such a treatment amounts to a substantial compliance with the requirement that they be credited to the paid-in surplus account.

We hold that the assessments paid by petitioner's stockholders to be used for amortization of its mortgages and which were so used were contributions to petitioner's capital.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*